NEW HAVEN & NORTHAMPTON COMPANY *vs.* JOEL HAYDEN & others.

Hampden. Jan. 6. — April 1, 1875. ENDICOTT & DEVENS, JJ., absent.

In an action by a railroad corporation on a contract whereby the defendants agreed to secure a right of way for the corporation free of expense to it between two given points, it appeared that the defendants failed to perform the contract, and the corporation acquired the right of way in the usual manner. It was agreed that the plaintiff was entitled to recover such sum as the plaintiff had paid or was bound to pay for the right of way. *Held*, that the plaintiff was entitled to recover as damages the following items : 1. Land taken for the road-bed five rods in width, and also land outside the limit of five rods, if necessary for the proper construction and security of the road. 2. Land damages for land taken for the use of the road, ordered to be paid by the county commissioners to one of the defendants, although the same had not been paid, he having appealed and failed to prosecute his appeal. 3. Money paid for building farm bridges over the road, and for building a bank wall, if the land damages were decreased thereby to an amount equal to their cost. 4. The ordinary legal costs in land damage cases, and compensation paid to attorneys at law and other agents for their services in relation to the settlement of land damages. *Held, also*, that the plaintiff was not entitled to recover : 1. Land damages paid for land, outside the limits of five rods, taken for stations or for procuring gravel to be used in the construction of the road. 2. Money paid to county commissioners for their services in assessing land damages.

CONTRACT on an agreement, whereby the defendants agreed to secure the right of way for the plaintiffs for their railroad, free of expense to the plaintiffs, from the westerly side of the town farm in Northampton to the western terminus of the road in Williamsburg.

After the former decision reported 107 Mass. 525, the parties agreed that judgment should be rendered for the plaintiffs for

three fifths of such sum as an assessor should find " the plaintiffs have paid or are bound to pay for their right of way described in the contract," and that the assessor should report any question of law arising at the hearing, if requested by either party. The assessor made his report to the Superior Court, and the case was tried without a jury, before *Aldrich*, J., and upon the assessor's report, which was the only evidence in the case, the judge found that the plaintiffs were entitled to recover the sum of $45,484.29 and interest, and ordered judgment for the plaintiffs for three fifths of said sum ; and the defendants alleged exceptions, the nature of which appears in the opinion of the court.

*N. A. Leonard & D. W. Bond*, for the defendants.

*E. B. Gillett*, for the plaintiffs.

MORTON, J. The assessor's report presents numerous questions of law, but many of them have been waived by the parties, and we shall consider only those which were insisted on at the argument in this court.

1. The first question is as to the extent to which the defendants are liable under their contract for the land which the plaintiffs have taken or purchased for the use of their road. The defendants claim that they are liable only for a strip of land five rods in width, and not for any land in excess of that width.

The plaintiffs claim that the defendants are liable for all the land taken for the use of the road, including land taken for stations and " borrowing pits."

We are of opinion that neither of these claims can be sustained in full. The defendants agreed that they would " secure the right of way for the road, free of expense to your company." The language is indefinite, but applied to the subject matter of the contract and considered in connection with the situation of the parties, is not difficult of construction. The purpose of the contract was to induce the plaintiffs to extend their road to Williamsurg. The evident intention of the parties was that the road was to be located under the laws of Massachusetts, and that the defendants were to secure to the plaintiffs such a right of way as would be secured by proceedings under the statutes. This is not necessarily limited to a width of five rods. A railroad corporation may take " as much more land as may be necessary for the proper construction and security of the road." Gen. Sts. *c.*

63, § 17.   And land thus taken becomes to all intents and pur-
poses a part of " the road."   If therefore the plaintiffs, acting in
good faith, and using the care and prudence which they would
have used if proceeding to take land under the statute at their
own expense, found it necessary to take land outside of the limits
of five rods for the proper construction and security of the road,
such land falls within " the right of way " contemplated in the
contract, and the defendants are liable to reimburse the plaintiffs
for the expenses incurred in purchasing or taking it.

But a different rule applies to land outside of the limits of five
rods taken for purposes of "borrowing pits " or stations.   Such
lands are not properly a part of the road.   They are necessary
only for the purposes of building and operating the road.   The
defendants' contract obliges them " to secure a right of way,"
but it does not make them liable for any of the expenses inci-
dent to the building or operating the road.   They are not there-
fore liable for the land outside the limits of five rods taken for
stations or " borrowing pits."

2. The plaintiffs, in locating their road, took land of Hayden,
one of the defendants.   He made a claim which was examined
by the county commissioners, who awarded him $1800 damages.
He thereupon made application for a jury to assess his damages
and no further action has been taken in the matter.   The defend-
ants claim that as the plaintiffs have not paid these damages they
cannot recover anything on account of this land.   It is clear that
the plaintiffs are damnified by the refusal of the defendants to
secure to them a right of way through Hayden's land.   Though
they have not paid, they are liable to pay whatever damage they
have caused to Hayden by taking this land.   We see no insuper-
able objection to their recovering their damages in such a case,
the rule being that they may recover whatever they may prove
are the damages to Hayden's land which they are liable to pay.
Otherwise, the plaintiffs must altogether lose this item of their
damages, or postpone their right to recover any part of their
damages so long as Hayden, one of the defendants, shall delay
to prosecute his appeal from the estimate of the commissioners.
In this case the circumstances are peculiar.   By the agree-
ment, signed by all the parties, submitting the case to the as-
sessor, he was to determine what sum " the plaintiffs have paid

or are bound to pay for their right of way described in the contract." As stated before, the plaintiffs are bound to pay Hayden whatever damage they have caused him by taking his land. They have no power of avoiding their liability to pay the amount assessed by the commissioners, as Hayden may at any time waive his application for a jury and accept these damages. Gen. Sts. c. 43, § 41. Under these circumstances, the plaintiffs are entitled to recover the amount which they were liable to pay Hayden as his damages. The amount was a question of fact, and there is nothing to show that the finding of the assessor thereon was erroneous.

3. The assessor allowed to the plaintiffs the expenses incurred by them in building several "farm bridges." These bridges were of no benefit to the road, but the purpose of each was to enable the landowner to pass from one portion of his farm to another. If the effect of building these bridges was to reduce the amount of land damages to an extent equal to their cost, these charges were properly allowed. The plaintiffs are entitled to recover the whole of the land damages they were obliged to pay. If they paid them in part by building bridges for the accommodation of the landowner, the cost of such bridges is a part of the damages they have sustained by the breach of the defendants' contract. It was a question of fact whether the building these bridges did thus reduce the land damages, upon which we cannot revise the findings of the assessor.

4. The item allowed by the assessor for the cost of building a bank wall against the lands of the Haydenville church depends upon the same considerations. The report of the assessor shows no error of law in regard to this item, and we cannot revise his findings upon questions of fact.*

---

* The assessor's report on this point was as follows : "It was admitted that the records of the county commissioners of Hampshire showed that they had passed an order requiring the plaintiffs to build this wall, where the lands were crossed by plaintiffs' railroad. The defendants claimed that the commissioners had no authority to pass such order, and if it was complied with by the plaintiffs they could not recover the same of the defendants. I find as a fact that the wall was constructed by the plaintiffs at the cost charged, and allowed the same, subject to the opinion of the court upon the question of the defendants' liability therefor."

5. The defendants object to the allowance of various items, being the " costs and expenses in proceedings for the settlement of land damages and in procuring legislation." The assessor in his report has divided those items into classes.

The first class, being for " ordinary legal costs in land damage cases, including witness fees," ought clearly to be allowed. They were expenses unavoidably incurred by the plaintiffs in procuring the right of way which the defendants agree to secure to them without expense. The second class, for " professional legal services before the committee of the legislature in relation to new legislation," is not now claimed by the plaintiffs. As the sum which the Superior Court ruled that the plaintiffs were entitled to recover includes the items of this class, it follows that the ruling was in this respect erroneous.

The third and fourth classes are for " professional legal service in proceedings relating to the settlement of land damages," and " services and expenses of agents in the settlement of land damages." In regard to these items the assessor has found that they were expenses incurred in the ordinary course of proceedings in the settlement of claims for land damages for which the plaintiffs were liable, and that the charges are reasonable. The plaintiffs are entitled to recover all the damages actually and directly sustained by reason of the defendants' breach of contract. It is to be assumed from the findings of the assessor that it was necessary and proper for the plaintiffs to employ the agents they did. The amounts paid to them were losses to the plaintiffs directly caused by the defendants' breach of contract. In this respect compensation paid to an attorney at law stands upon the same footing as compensation paid to any other agent. The cases of *Leffingwell* v. *Elliott*, 10 Pick. 204, and *Reggio* v. *Braggiotti*, 7 Cush. 166, relied upon by the defendants, do not apply to this case. In neither of those cases was the employment of counsel a direct and necessary consequence of the breach of contract by the defendants. But in the case at bar the failure of the defendants to secure the right of way made it necessary for the plaintiffs to procure it themselves, either by negotiation with the landowners or by application to the county commissioners; and the necessary expenses of such negotiations and applications were elements of the damages directly caused to the plaintiffs by the defendants' breach of contract.

The fifth class is for certain amounts paid by the plaintiffs to the county commissioners. The amounts thus paid were claimed by the commissioners as compensation for their services and travel in the various land damage cases. The defendants object that these payments are without authority of law, and we are of opinion that this objection must be sustained.

By the Rev. Sts. c. 84, § 4, county commissioners were entitled to receive "each at the rate of one dollar for every ten miles actually travelled by them, and three dollars a day for the time employed in discharging the duties of their office." But in 1859 it was provided that "instead of the compensation now allowed them by law, the county commissioners and special commissioners of each county in the Commonwealth shall receive, out of the treasury of each county, a fixed annual salary, which shall be in full payment for all services rendered and travel performed by them in discharge of their duties in their respective counties." St. 1859, c. 163. This mode of compensation has not been since altered. Gen. Sts. c. 17, § 29. St. 1860, c. 185, § 1. St. 1864, c. 280, § 1. St. 1867, c. 340, § 1.

The services of the county commissioners upon the application for the assessment of damages for land taken for a railroad are a part of their official public duties, for which the salary established by law is deemed a sufficient compensation; and they have no legal right to charge additional compensation to the parties who are litigating before them. The payments we are considering were therefore payments which the plaintiffs were not obliged to make, and they cannot recover the amounts thereof of the defendants.

The result of the whole case is, that the ruling of the Superior Court was erroneous, in allowing the plaintiffs to recover for land taken for stations and borrowing pits, for professional services before the committee of the legislature in reference to new legislation, and for the amounts paid to the county commissioners for their compensation. In other respects the ruling was correct.                              *Exceptions sustained.*