CHARLES F. WHEELER *vs.* JOSEPH W. HANSON.

Suffolk.   January 12, 1894. — May 18, 1894.

Present: FIELD, C. J., ALLEN, MORTON, & BARKER, JJ.

*Malicious Prosecution — Evidence — Damages — Practice.*

In an action for malicious prosecution on a criminal charge, the plaintiff may show that in the record of "No bills" returned by the grand jury to whom the alleged criminal charge against him was presented, the substitution of the letter P for the letter F as the initial of his middle name was a clerical error, and that he was the person meant.

In an action for malicious prosecution on a criminal charge, evidence as to what the plaintiff paid sureties to go upon the bond required of him for his appearance in the Superior Court, and what he paid for counsel fees, was properly admitted, as was also the evidence as to the nature of the plaintiff's employment, and the tools required in it, the difficulty which after his discharge he had in obtaining employment, the amount of his earnings before and after the criminal prosecution, the injury to his feelings and reputation, and the indignity which he suffered.

In an action for malicious prosecution on a charge of embezzlement of goods from the defendant's store, evidence that land was taken by the plaintiff from a purchaser in payment for the goods at a price greatly above its real value would have no tendency to show that the defendant had probable cause for believing that the plaintiff had embezzled the goods, and is not admissible in mitigation of damages.

In an action for malicious prosecution evidence as to damages after the date of the writ is admissible.

In an action for malicious prosecution on a criminal charge, it is not proper for the defendant to argue to the jury as to the effect of the plaintiff's motion to dismiss the complaint against him in the Municipal Court.

TORT, for the malicious prosecution against the plaintiff of a charge of embezzlement. Writ dated April 18, 1892.

Trial in the Superior Court, before *Bond*, J., who allowed a bill of exceptions, in substance as follows.

One Ingalls, clerk of the Municipal Court of the City of Boston for the transaction of criminal business, against the objection of the defendant, read the complaint charging the plaintiff with

embezzlement, and the docket entries of that court in relation thereto, and testified that, according to the usual practice in that court, he caused an attested copy of the complaint to be made, and transmitted to the clerk of the Superior Court for criminal business. In that copy of the complaint, however, the defendant was described as Charles P. Wheeler instead of Charles F. Wheeler.

The assistant clerk of the Superior Court for the County of Suffolk for the transaction of criminal business, against the objection of the defendant, read the record of that court for the March term, 1892, which was as follows.

"Saturday, March 12, 1892.

"In the following cases the grand jurors attending said court having returned no bills, the court doth order that the prisoners be severally discharged and go without day:

. . . . .

. . . . .

Commonwealth *v.* Charles P. Wheeler, embezzlement."

He also testified that neither the name of Charles F. Wheeler nor Charles P. Wheeler appeared on the record among those against whom the grand jury found indictments at the March term, 1892. It did not appear from the record that the grand jury found no bill against Charles F. Wheeler at the March term, and no record or other evidence was introduced to show any action by the grand jury at any other term relating to any criminal proceeding against the plaintiff.

The plaintiff testified that he was in court when the grand jury reported for the March term; and that he heard the announcement of "No bill" found against Charles P. Wheeler, and that thereupon he was discharged and permitted to go without day by the court upon the complaint for the alleged embezzlement, and the defendant admitted that, with other witnesses, he testified before the grand jury with reference to the alleged embezzlement substantially as he had testified in the Municipal Court under the complaint against Charles F. Wheeler.

The plaintiff testified that he was a watchmaker by trade; that in April, 1891, he entered into an agreement to work for the defendant in a jewelry store on Tremont Street in Boston

owned by him, and continued in the defendant's employ until January 21, 1892, when he and the defendant entered into a new agreement, by which the plaintiff, in lieu of wages, was to receive all that he received for the sale of goods in excess of the prices at which they were entered in duplicate in two books, each containing a duplicate of the agreement, one of which was to be retained by each party; that the defendant was not at the store much of the time, but was desirous of selling it, and at about that time had advertised it for sale, and had informed the plaintiff that, if he would find a purchaser therefor for the price of one thousand dollars, he would pay him a commission, and that he might sell the store in his own name; that the plaintiff effected a sale of the store at that price to one Smith, in exchange for a tract of land in the town of Millis, with the understanding that Smith might have a reconveyance of the land by the payment of one thousand dollars within thirty days thereafter; that during the negotiations the defendant was notified thereof, and assented to the exchange, and authorized the plaintiff to take a deed of the land in his own name, and subsequently ratified the same; that the defendant having given his consent to a bill of sale from the plaintiff to Smith, the plaintiff, on February 5, 1892, executed in his own name and delivered to Smith the bill of sale, and Smith executed and delivered to the plaintiff a deed of the land in Millis, the consideration in each deed being stated as "one dollar and other valuable considerations"; that at the same time the plaintiff executed and delivered to Smith an agreement by which the latter acquired an option to demand a reconveyance of the land upon payment within thirty days of one thousand dollars; that the plaintiff immediately sent the deed to Dedham to be recorded, and that thereupon he and Smith went, with one Dixon, a broker through whom the sale had been negotiated, to the store, and the plaintiff delivered possession of it to Smith and Dixon, and the latter, at Smith's request, fastened the door of the store with a padlock "to keep the other man out," it having previously been stated by the plaintiff to Dixon and Smith that "there was another party interested whose consent must be obtained," though the name of the defendant, to whom reference was made, was not mentioned. The plaintiff had removed no goods from the store, but he had

compared them with the schedule, and had found that they were all there at the time of the delivery of the bill of sale.

The complaint against the plaintiff was made on February 12, 1892, and he was arrested on the same day, and his premises were searched by virtue of a search-warrant, and the book of the defendant was found there, which the plaintiff testified he had taken home for the purpose of safe keeping at the time of the delivery of possession to Smith, as well as certain articles of jewelry which the plaintiff, with the defendant's consent, reserved from the store to offset the value of some tools belonging to him which were included in the bill of sale.

When the plaintiff was arrested he was committed to jail, and on February 18, 1892, he filed a motion to dismiss the complaint, which was overruled, and upon the hearing he was ordered to recognize in the sum of $800, with sureties, to appear and answer at the next March term of the Superior Court for criminal business, and, failing so to recognize, was again committed to jail, where he remained a week, and until he recognized.

The plaintiff, against the objection and exception of the defendant, was allowed to show that he paid $50 to the sureties who went upon his recognizance, and the same sum for counsel fees in the defence of the complaint against him in the Municipal Court. He further testified, against the objection and exception of the defendant, that after the hearing he endeavored to procure employment, and made application at the store of one Percival to purchase tools on credit, which application was refused by the salesman to whom it was made because he had heard that the plaintiff "had been in jail on account of that jewelry store on Tremont Street"; that he made a similar application at the store of one Myers, and was refused, and was asked whether "he was the man that was arrested"; that, by reason of the taking from him on the search-warrant of the goods which he had reserved, he was unable to procure tools, and without them he could not obtain employment; that prior to January 21, 1892, he had been earning from $18 to $20 per week, and that after his arrest, with the exception of small irregular jobs, it was more than five months before he obtained employment, and that he then, after this action was brought, secured employment by which he was able to earn from $12 to $16.50 per week.

Smith was called as a witness by the plaintiff, and gave substantially the same testimony as to their transaction as the plaintiff, and on cross examination, having stated that he had never seen the land which he conveyed to the plaintiff, was asked how much he paid for it. The judge excluded the question, and the defendant excepted.

The plaintiff introduced further evidence tending to show that the criminal prosecution was malicious, and without probable cause.

The defendant testified in his own behalf, and also called as a witness one Snow, who was an assessor of the town of Medway, and offered to show by him that the land taken by the plaintiff was swamp land, and of little or no value. The evidence was excluded, and the defendant excepted.

This was all the material evidence in the case.

The defendant's attorney, in his closing argument, proceeded to argue that the fact that the plaintiff had filed a motion to dismiss the complaint in the Municipal Court, tended to show an unwillingness on his part to meet the charge contained in the complaint on its merits, but the judge refused to permit him to argue upon that point; and the defendant excepted.

Appropriate instructions were given to the jury, to which no exception was taken, except as to that portion relating to the right of the jury to determine whether the criminal prosecution had been terminated before the commencement of this action.

On this point the judge instructed the jury as follows:

"The complaint that was introduced here as signed by this defendant was against Charles F. Wheeler, but the record of the proceedings before the grand jury shows that the matter acted upon by it, and upon which ' No bill ' was reported, named the defendant as Charles P. Wheeler. Now is that the same person as was designated in the complaint which was signed by the defendant. . . . The initial letter of the middle name was F in the original complaint, which is the real name of this plaintiff; but when it comes to this court, the paper that is relied upon as the one that shows the termination of these proceedings is against Charles P. Wheeler. . . . You may take into consideration the fact that the two complaints were signed by

the same person by the name of the defendant; that the goods described in the original complaint as having been embezzled were precisely the same goods which were described in the complaint upon which the grand jury acted, and that the entire description of the property which was taken, and of the offence which was said to have been committed, is the same as that charged in the original complaint. You may also take into account that there was no other complaint, so far as that has been proven by the records, against any Charles F. Wheeler; that there was no complaint upon which the grand jury returned ' No bill ' against Charles F. Wheeler; that there was no indictment returned against any Charles F. Wheeler; that the number of the case in the Municipal Court was the same as the one upon which the grand jury acted, and upon which the plaintiff relies here as being the same, showing that it really is the same case. Take all of these circumstances into account, and say whether it is the same case, the same charge against the same man, although there was a different description of his middle name — the initial letter — in the one that the grand jury had from the one that was signed by the defendant. If it was the same complaint, and the grand jury reported ' No bill ' upon it, that is a termination of this complaint, so that the party is then entitled to bring his suit."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*S. H. Tyng*, for the defendant.

*J. K. Berry*, (*E. R. Anderson & E. C. Upton* with him,) for the plaintiff.

MORTON, J. The first objection by the defendant to the admission of evidence did not result in an exception, and need not, therefore, be considered.

We discover no error in regard to the admission of evidence to show that the prosecution had terminated. The substitution of the letter P for the letter F as the initial of the plaintiff's middle name was wholly a clerical mistake, and the plaintiff was properly allowed to show that fact and that he was the person meant. *Wood* v. *Le Baron*, 8 Cush. 471. In an action against the plaintiff's sureties on his recognizance, it could have been shown that the mistake in his name was a purely clerical

error. *Wood* v. *Le Baron, ubi supra.* The principle that a record cannot be impeached or contradicted has no application to a case like the present, where it is evident from one part of the proceedings that a clerical mistake has occurred in another part of the proceedings. *Eastman* v. *Perkins,* 10 Cush. 249. *Commonwealth* v. *McMahon,* 133 Mass. 394. *Commonwealth* v. *Brigham,* 147 Mass. 414, 416.

The evidence as to what the plaintiff paid the sureties to go upon his bond, and what he paid for counsel fees, was properly admitted. If it was objected to on the ground that there was no allegation of special damage in the declaration, that objection should have been called to the attention of the court at the trial, and was not.

The expenses to which the plaintiff was put in procuring sureties and in employing counsel were the direct and necessary result of the defendant's act, and constituted a part of the damages to which the plaintiff was subjected in consequence thereof. *Savile* v. *Roberts,* 1 Ld. Raym. 374. *Foxall* v. *Barnett,* 2 El. & Bl. 928. *Sheldon* v. *Carpenter,* 4 Comst. 578. *Marshall* v. *Betner,* 17 Ala. 832. *Lawrence* v. *Hagerman,* 56 Ill. 68, 75. *Magmer* v. *Renk,* 65 Wis. 364. *Walker* v. *Pittman,* 108 Ind. 341. *Blunk* v. *Atchison, Topeka, & Santa Fe Railroad,* 38 Fed. Rep. 311, 317. 2 Greenl. Ev. § 456. It has been held more than once in this State, that when the plaintiff has, in consequence of the wrongful conduct of the defendant, been put to expense in the employment of counsel, the amount so paid is an element of damage in an action against the defendant arising out of such wrongful conduct. *Pond* v. *Harris,* 113 Mass. 114, 121. *New Haven & Northampton Co.* v. *Hayden,* 117 Mass. 433. *Westfield* v. *Mayo,* 122 Mass. 100. *Faneuil Hall Ins. Co.* v. *Liverpool, London, & Globe Ins. Co.* 153 Mass. 63, 72. See also *Boston & Albany Railroad* v. *Charlton, ante,* 32, and *Conant* v. *Burnham,* 133 Mass. 503, 505.

We also think that it was competent for the plaintiff to show the nature of his business and the tools required in it, the difficulty which he had in getting employment, the trouble to which he was subjected by taking away the property on which he relied to obtain other tools, the amount of his earnings, the injury to his feelings and reputation, and the indignity which

he suffered. *Hunter* v. *Farren*, 127 Mass. 481. *Morgan* v. *Curley*, 142 Mass. 107. *French* v. *Connecticut River Lumber Co.* 145 Mass. 261. *Leach* v. *Wilbur*, 9 Allen, 212. *Tompson* v. *Mussey*, 3 Greenl. 305. *Ehrgott* v. *Mayor, &c. of New York*, 96 N. Y. 264. Sedgwick, Damages, (8th ed.) § 133.

The natural and necessary results of the charge which the defendant made against the plaintiff, and of his action thereon, would be, as they became known, to render it more difficult for him to obtain employment, and to impair his credit and to affect his reputation, besides injuring his feelings and subjecting him to indignity.

The prosecution instituted by the defendant against the plaintiff was for the embezzlement of goods from the store. Evidence that the land taken by the plaintiff in exchange for the store was taken at a price greatly above its real value would have no tendency to show that the defendant had probable cause for believing that the plaintiff had embezzled the goods, and was not admissible in mitigation of damages. *Bliss* v. *Franklin*, 13 Allen, 244. It was therefore properly excluded.

There can be but one assessment of damages for the cause of action on which this suit is based, and all the damages, those accruing after as well as before the bringing of the action, must be included in it. Evidence as to damages after the date of the writ was therefore rightly admitted. *Fay* v. *Guynon*, 131 Mass. 31. The case is not like that of a continuing trespass, for instance, where new causes of action arise from day to day, or a case in which there may be successive breaches of the same contract.

The court properly refused to allow the defendant to argue to the jury as to the effect of the motion to dismiss, filed by the plaintiff in the Municipal Court. The plaintiff had a right to make the motion, and it cannot be considered in any sense as an admission of guilt on his part, or as showing that the defendant had probable cause to believe him guilty.

The result is, that the exceptions must be overruled, and it is

*So ordered.*