789 F.2d 83
 1986 A.M.C. 2813
 The MUTUAL FIRE, MARINE AND INLAND INSURANCE COMPANY,
Plaintiff, Appellee,
v.
Gerald COSTA and Ranger IV Corporation, Defendants, Appellees.
Appeal of INLAND BROKERAGE CORPORATION, Defendant, Appellant.
The MUTUAL FIRE, MARINE AND INLAND INSURANCE COMPANY,
Plaintiff, Appellee,
v.
Gerald COSTA and Ranger IV Corporation, Defendants, Appellants.
 Nos. 85-1572, 85-1590.
 United States Court of Appeals,
First Circuit.
 Argued Feb. 4, 1986.
Decided April 29, 1986.
 
 Thomas W. Porter, Jr. with whom Robert P. Powers and Melick & Porter, Boston, Mass., were on brief, for Inland Brokerage Corp.
 Paul F. Ware, Jr. with whom Loretta M. Smith and Goodwin, Procter & Hoar, Boston, Mass., were on brief, for Gerald Costa and Ranger IV Corp.
 Erik Lund with whom John Egan and Posternak, Blankstein & Lund, Boston, Mass., were on brief, for Mut. Fire, Marine and Island Ins. Co.
 Before COFFIN and BOWNES, Circuit Judges, and PETTINE,** Senior District Judge.
 COFFIN, Circuit Judge.
 
 
 1
 These appeals require us to decide whether the district court appropriately awarded summary judgment in favor of the Mutual Fire, Marine and Inland Insurance Company (Mutual Fire), finding that the insurance policy issued by Mutual Fire did not cover liability incurred by Gerald Costa and the Ranger IV Corporation. We must also decide whether, in a third-party action between Costa and the Inland Brokerage Corporation (Inland), the district court erred in its instructions to the jury and in refusing to grant attorney's fees to Costa and the Ranger IV Corporation. We conclude that the district court properly awarded summary judgment to Mutual Fire and did not err in its instructions to the jury. We also conclude that the court should have granted attorney's fees to Costa and the Ranger IV Corporation.
 
 I. BACKGROUND FACTS
 
 2
 Mutual Fire issued an insurance policy to a New York corporation, "Atomic Fishing", covering the company's vessel, ATOMIC II", for the period July 1982 to July 1983. The policy was procured for Atomic Fishing by Inland Brokerage Corporation, an insurance broker in New York. The policy covered the vessel against passenger claims for bodily injury and property damage. Under the column "Description of Hazards", the policy stated: "Name of Boat: Atomic II; Operating Season: 12 Months; Max. # of Passengers: 100". Below this description was stamped the statement: "Coverage under this policy is specifically limited to the description of hazards as above. Any hazard not specifically described is excluded from coverage."In September 1982, Gerald Costa entered into an agreement to buy the ATOMIC II. Shortly thereafter, he contacted Inland regarding the insurance. On behalf of Costa, Inland requested that Mutual Fire's agent, North Island, issue an endorsement changing the name of the insured to "Captain Gerald Costa", the name of the boat to "RANGER IV", and the docking area to "McMillan Pier, Provincetown, Massachusetts." The endorsement further stated that all other terms and conditions of the policy remained the same.
 
 
 3
 In November 1982, purchase of the vessel was consummated by the Ranger IV Corporation, a corporation wholly owned by Costa's wife. In February 1983, the Ranger IV Corporation and the New England Aquarium Corporation (NEA) entered into an agreement to offer whale watching tours from the Aquarium's pier in Boston. Costa subsequently sent Inland two pages of the agreement which detailed the insurance required by the NEA in the agreement. The agreement noted that RANGER IV was licensed to carry 149 passengers. In February, Inland advised NEA that arrangements had been made to obtain additional insurance coverage.
 
 
 4
 On May 28, 1983, the RANGER IV was struck by the wake from an incoming freighter. Three passengers were injured and subsequently filed claims. At the time of the accident, the vessel was carrying 118 passengers. Mutual Fire filed a declaratory judgment action disclaiming coverage on various grounds, including the ground that the vessel was carrying more than the 100 passengers at the time. Costa filed a third-party complaint against Inland, claiming that if Mutual Fire obtained the declaration it sought, Inland would be liable to Costa for breach of contract and negligence in failing to procure the insurance it had promised to obtain.
 
 
 5
 Mutual Fire and Costa filed cross-motions for summary judgment. These motions were initially denied. Upon transfer of the case to a new judge for trial, the motions were renewed. The district court granted Mutual Fire's motion for summary judgment on the ground that the policy explicitly limited the risk insured to a vessel carrying a maximum of 100 passengers, and that a vessel carrying 118 passengers was thus not a risk covered by the insurance. Costa's third party claim against Inland continued to jury trial. The jury found that Costa had asked Inland to change the number of passengers covered and that Inland had been negligent in failing to do so. Judgment was subsequently entered against Inland.
 
 
 6
 Inland appeals from the summary judgment entered in favor of Mutual Fire and from the judgment against it in Costa's and Ranger IV's third party action. Costa and Ranger IV appeal from the summary judgment in favor of Mutual Fire and from the district court's refusal to allow it to recover from Inland the attorney's fees it incurred in defending against Mutual Fire's declaratory judgment action.
 
 II. SUMMARY JUDGMENT
 
 7
 In order to grant summary judgment, a court must find that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party opposing the summary judgment motion must show the existence of an issue of fact that is both "genuine" and "material". Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir.1975). To be considered "genuine", there must be "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial". First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). The evidence manifesting the dispute must be "substantial", going beyond the allegations of the complaint. Hahn, 523 F.2d at 464.
 
 
 8
 We conclude that the district court appropriately granted summary judgment in favor of Mutual Fire. Under the heading "Description of Hazards", the policy clearly stated: "Max. # of passengers: 100". The policy further stated that the insurance was "specifically limited to the description of hazards as above." The district court correctly concluded that the plain and unambiguous language of the policy indicated that the number of passengers was to operate as a direct limitation on the insurer's exposure or "hazard". Coverage was afforded to Costa for the hazard of operating a vessel with a maximum of 100 passengers on board. The operation of a vessel with more than 100 passengers was not a hazard specifically described and was therefore expressly excluded from coverage.
 
 
 9
 Costa's argument that, to grant summary judgment for Mutual Fire, the policy was required to include an explicit statement that coverage would be nullified for any passenger if the vessel carried more than 100 passengers, regardless of the number injured, is without merit. It is clear that the presence of a larger number of potential claimants on board a vessel at any one time increases the risk of loss to an insurer, regardless of the number of individuals who may ultimately suffer injuries. In this case, the hazard described in the policy explicitly stated "max. # of passengers: 100" and the policy endorsement stated that "any hazard not specifically described is excluded from coverage." There was no need for yet an additional statement that a vessel carrying more than 100 passengers would not be covered at all. As the district court noted, the explicit description in the policy of the maximum number of passengers operated as the functional equivalent of a "condition precedent", whose violation would nullify coverage for any passenger on the ship. See e.g., Charles, Henry & Crowley Co., Inc. v. The Home Ins. Co., 349 Mass. 723, 726, 212 N.E.2d 240, 242 (1965) (when policy was interpreted as having a stated condition precedent that value of goods in a window display not exceed $14,500, no coverage was afforded when goods worth $13,620 were stolen because the value of the goods in the display at the time was $18,000).[1]
 
 
 10
 During trial, Inland introduced an expert witness, Howard Clark. Clark stated that, in his opinion, the language "maximum number of passengers: 100" was not a hazard under the policy but was rather a "description of the risk in general". In Clark's view, therefore, the addition of any number of passengers to the boat should not have allowed Mutual Fire to completely disclaim coverage.
 
 
 11
 In light of Clark's testimony, the district court allowed the reopening of the question of summary judgment.[2] The court concluded, however, that its original disposition of the summary judgment question remained correct. We agree with that determination. We note, first, that the court, after considerable examination conducted solely by itself, see infra n. 4, ruled that Clark was not "qualified by experience to construe this type of policy or its language". Neither Inland nor Costa have argued that the trial judge erred in making this determination regarding Clark's qualifications. We therefore accept the determination of the district court on this matter.
 
 
 12
 Second, even had the trial court accepted Clark as qualified to interpret this particular type of insurance policy, Clark's testimony was so weak and internally inconsistent that the court did not err in refusing to change its summary judgment decision as a result of that testimony. Clark first testified that use of the term "minimum and deposit" in the policy indicated that the initial premium in the policy was to be based upon a maximum number of 100 passengers, but that this minimum premium could be revised should the number of passengers increase. Clark also testified, however, that because under the column "Premium Bases", the policy stated: "# of watercraft: one", the policy's premium was based solely on the existence of one vessel. Clark therefore testified that regardless of the number of passengers on the boat, the insurer would have had no right to ask for an additional premium.[3]
 
 
 13
 Apart from internal inconsistencies, Clark's testimony was weak regarding the hazard covered by the policy. Clark testified that the hazard was indicated solely and sufficiently by the code number 44207(a). That code number, however, refers to an extremely general classification: "boats and vessels (all types except ferries)--public--operated by the insured and used for carrying passengers for a consideration". That an insurer could estimate its exposure solely by recourse to this description is beyond our ken. Clark never adequately answered the trial court's questions as to why the additional information included under the code number, such as the name of the boat and the maximum number of passengers, were not relevant refinements of the covered hazard.[4]
 
 
 14
 We conclude, therefore, that the district court appropriately awarded summary judgment in favor of Mutual Fire. Although it is true that ambiguities in an insurance contract must be construed in favor of an insured, see e.g., Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81, 469 N.E.2d 797 (1984), it is equally true that clear and unambiguous provisions "should be maintained unimpaired by loose and ill considered interpretations." Sherman v. Metropolitan Life Ins. Co., 297 Mass. 330, 336, 8 N.E.2d 892, 895 (1937), quoting Williams v. Union Central Life Ins. Co., 291 U.S. 170, 180, 54 S.Ct. 348, 352, 78 L.Ed. 711 (1934). In this case, the provision limiting coverage to a vessel carrying a maximum number of 100 passengers was unambiguous and must be given its proper effect.
 
 III. JURY INSTRUCTIONS
 
 15
 Inland challenges four aspects of the jury instructions given by the district court. We find no merit in any of the challenges it raises.
 
 
 16
 First, Inland claims that the court's instruction on contributory negligence was confusing and prejudicial. Inland sought to prove that Costa was contributorily negligent by carrying more passengers on his boat than his insurance policy allowed. In instructing the jury on contributory negligence, the judge noted that it would be understandable if Costa did not read the fine print of the policy, but pointed out that the figure of 100 passengers was quite prominent in the policy. Inland contends that the judge's comment that a policy-holder may justifiably not read the fine print of a policy was confusing and prejudicial. It appears to us that, to the contrary, the judge's comments on fine print were essentially irrelevant as the judge clearly pointed out that the actual term in question was quite prominent in the policy. We hold, therefore, that the instruction on contributory negligence was free of error.
 
 
 17
 Second, Inland claims that the comments of the judge to the third special question given to the jury were improperly leading. We do not find the comments to have been improper. Of even greater importance, the jury never had occasion to answer the third special question. Once the jury answered the first question in the affirmative, as they did, they were told to skip questions two and three and proceed to question four. We therefore find no error in the instructions regarding question three.
 
 
 18
 Third, Inland contends that the trial judge did not give sufficiently clear instructions on the principles applicable to a breach of contract. We conclude that the judge's instructions were more than adequate. Inland's requested instructions stated, at some length, the basic contract principles that binding agreements must be definite and expectations and negotiations fall short of agreements. The instructions given by the trial judge likewise stated the essential principle that, for a contract to be formed, Costa had to have ordered the procurement of increased insurance coverage from Inland with the expectation of paying for it. The district court emphasized to the jury that for Costa simply to ask Inland for a price quotation or to discuss the matter with Inland with the intent of discussing it further would not constitute a sufficient "order". We hold that the court's instructions were proper and fully covered Inland's requests.
 
 
 19
 Fourth, Inland claims that the trial judge instructed the jury that no coverage was available under the Mutual Fire policy, and that this instruction was highly prejudicial to Inland. Inland does not clarify why it would have been such a significant error had the jury been told explicitly of the prior summary judgment decision. Regardless of that problem, however, the major flaw in Inland's claim is that the judge never even gave such an instruction. Rather, in explaining two of the special questions, the judge noted to the jury that, if the number of passengers on the policy were not changed, it was possible that Mutual Fire could disclaim coverage. The judge went on to state that in doing so, Mutual Fire "might be wrong as a legal proposition, or they may be right." This is far from the instruction that Inland claims was given that no coverage was available under the policy.
 
 
 20
 In conclusion, we note that the four challenges raised by Inland to the jury instructions are meritless, and in fact, some clearly border on the frivolous.
 
 III. ATTORNEY'S FEES
 
 21
 Costa and Ranger IV Corporation sought attorney's fees from Inland to cover the cost of defending the declaratory judgment brought by Mutual Fire. The district court denied the request for fees. We conclude that fees should have been awarded in this case.
 
 
 22
 The general rule in Massachusetts, as elsewhere, is that a prevailing party in an ordinary two-party lawsuit is awarded only costs and not attorney's fees. Chartrand v. Riley, 354 Mass. 242, 243-44, 237 N.E.2d 10 (1968). There is, however, an exception to this rule. As the Massachusetts Supreme Judicial Court stated it in M.F. Roach Co. v. Provincetown, 355 Mass. 731, 732, 247 N.E.2d 377 (1969): "[w]hile, as we indicated in Chartrand v. Riley ... counsel fees are not ordinarily collectible as an element of damages, the rule has its exception in the event of tortious conduct ... requiring the victim of the tort to sue or defend against a third party in order to protect his rights." That is, when the natural consequence of a defendant's tortious conduct or a defendant's breach of contract is to cause the plaintiff to become involved in litigation with a third party, the attorney's fees associated with that litigation are recoverable from the defendant. See Restatement Second of Torts, Sec. 914(2); 22 Am.Jur.2d, Damages, Sec. 166 at 235-36; 25 C.J.S., Damages, Sec. 50 at 787-88.
 
 
 23
 Inland argues that this exception should not apply because there is no evidence that Inland engaged in intentional or malicious activity. The flaw in Inland's argument is that these criteria have no applicability to the exception regarding litigation with third parties. It is true that in an early case, Wheeler v. Hanson, 161 Mass. 370, 37 N.E. 382 (1894), the Massachusetts Supreme Judicial Court held that an exception to the general rule precluding attorney's fees applied when a party, in a two-party lawsuit, prevailed on an action for malicious prosecution. In later cases, the Massachusetts courts expanded this exception to apply to a variety of situations in which a defendant's actions had caused a plaintiff to resort to a lawsuit against that defendant. See, e.g., Malloy v. Carroll, 287 Mass. 376, 191 N.E. 661 (1934). In Chartrand, the Supreme Judicial Court cut back on these exceptions, noting that only in "exceptional circumstances" such as were present in Wheeler, should attorney's fees be awarded in an ordinary two-party lawsuit. Chartrand, 354 Mass. at 244-45, 237 N.E.2d 10.
 
 
 24
 No requirement of "exceptional circumstances" has, however, ever been required in those cases in which the plaintiff is forced to litigate against a third party because of the defendant's wrongful conduct. For example, in Harrison v. Textron, Inc., 367 Mass. 540, 554-55, 328 N.E.2d 838 (1975), the court denied counsel fees to the prevailing plaintiffs in an ordinary nuisance action. The court noted that this was neither a Wheeler case involving a malicious prosecution, nor a Roach situation where the defendant's tortious conduct required the victim of the tort to sue or defend against a third party in order to protect his rights. Harrison, 367 Mass. at 554-55, 328 N.E.2d 838. The court gave no indication that, in order for the Roach exception to apply, the defendant's tortious conduct had to be anything more than negligent. See also Danca v. Taunton Savings Bank, 385 Mass. 1, 11, 429 N.E.2d 1129 (1982) (trial judge on remand should consider whether bank's negligence, which caused plaintiffs to defend a suit brought by third parties, made it liable for attorney's fees under the rule announced in Roach.) Indeed in Roach, the court did not condition the application of the exception on the fact that the defendant had intentionally interfered with the plaintiff's contractual rights. Rather, it simply stated as a general rule that an exception applied when the defendant's tortious conduct required the victim to sue or defend against a third party. Roach, 355 Mass. at 732, 247 N.E.2d 377. In fact, the Roach court relied heavily on a case, Prentice v. North American Title Guaranty Corp., 59 Cal.2d 618, 30 Cal.Rptr. 821, 381 P.2d 645 (1963), in which the defendant's conduct had been merely negligent.
 
 
 25
 The district court, in denying fees, found it significant that Costa's defense against Mutual Fire's motion for summary judgment was part of the third-party proceeding against Inland. It is true that, in some cases that have discussed the third-party exception to counsel fees, courts have referred to a requirement that the litigation involving the third party take place in a "prior proceeding". See, e.g., Highlands Underwriters Insurance Co. v. Elegante Inns, Inc., 361 So.2d 1060, 1066 (Ala.1978). More recently, however, courts have clarified that it is not necessary for the litigation against the third party to have been separate from the litigation between the plaintiff and the defendant. See, e.g., Wood v. Old Security Life Insurance Co., 643 F.2d 1209, 1218 (5th Cir.1981) (interpreting Highlands Underwriters to not require a separate proceeding). The Massachusetts Supreme Judicial Court has adopted this approach. In Roach, the court noted the plaintiff had not first sued the third party and then sought to recover counsel fees from the tortfeasor in a second action, but had rather joined both claims in one lawsuit. Following the approach of the Supreme Court of California in Prentice v. North American Title Guaranty Corp., 59 Cal.2d 618, 30 Cal.Rptr. 821, 381 P.2d 645 (1963), the court ruled that it was irrelevant that the actions had been tried in the same court at the same time. As the court explained: "It would be unjust to deprive the plaintiff of its damages from the tortfeasor merely because it has conserved judicial resources by bringing one suit instead of two. Of course, it can be allowed only those counsel fees incurred in suing the third party." Roach, 355 Mass. at 733, 247 N.E.2d 377.
 
 
 26
 The attorney's fees incurred by Costa and Ranger IV in defending against Mutual Fire's declaratory judgment fall squarely within this third-party exception. The jury found that Costa had requested Inland to change the number of passengers designated on the policy, and that Inland had been negligent in failing to do so. If Inland had properly carried out its duty, Costa would not have been required to defend against Mutual Fire's declaratory judgment. The fact that Mutual Fire's declaratory judgment and Costa's third-party action against Inland were tried in one case does not vitiate Costa's right to recover the attorney's fees it was forced to incur as a result of Inland's conduct. Although Costa clearly cannot recover any of the attorney's fees it incurred in the third-party action against Inland, it can recover the portion of the attorney's fees it spent in defending against Mutual Fire's action. We therefore remand this case to the district court to determine the reasonable attorney's fees to be awarded Costa and Ranger IV Corporation.
 
 
 27
 The district court's summary judgment order, from which Inland, Costa and Ranger IV appeal is affirmed. The district court's judgment in favor of Costa and Ranger IV, from which Inland appeals, is affirmed. The district court's denial of attorney's fees, from which Costa and Ranger IV appeal, is reversed. On the issue of attorney's fees, the case is remanded to the district court for further proceedings consistent with this opinion. All costs shall be borne by Inland.
 
 
 
 **
 Of the District of Rhode Island, sitting by designation
 
 
 [1]
 Because a greater number of passengers increases the risk of loss, the district court was also correct in noting that, even if the passenger capacity clause was viewed not as a coverage provision but as a warranty, the provision satisfied the relevant Massachusetts statute. Mass.Gen.Laws Ann. ch. 175, Sec. 186 provides that "[n]o warranty made ... by the insured ... shall ... defeat or avoid the policy or prevent its attaching unless ... the matter ... made a warranty increased the risk of loss". The district court correctly ruled that, as a matter of law, the risk of loss was greater with 118 passengers than with 100
 
 
 [2]
 It should be noted that Inland was quite late in presenting this evidence to the judge. As third-party defendant, Inland had the right to assert against Mutual Fire any defenses that Costa had against Mutual Fire. Fed.R.Civ.P. 14(a). Yet Inland failed to submit any briefs or affidavits in opposition to Mutual Fire's motions for summary judgment prior to trial
 
 
 [3]
 Not only was this testimony internally inconsistent, but Clark's explanation of the "minimum and deposit" terms appears to defy common sense. As the district court noted, it would be quite odd for an insurer to allow a policy of this kind to be governed by a variable premium based on passenger number, with no express understanding of what the adjusted premium would be. Mutual Fire persuasively pointed out in defense that the term "minimum" simply meant that the premium listed was the minimum the insurer would accept and that the insured was therefore not entitled to a proration of the premium if it decided to cancel within the policy term. The term "deposit" referred to the fact that this minimum premium was to be deposited with the company at the inception of the policy term
 
 
 [4]
 We note that the entire posture in which this expert testimony was received was quite unusual. Clark was called by Inland as its expert witness at trial to testify that the policy at issue did afford coverage--long after the insurer, Mutual Fire, had been dismissed from the action by summary judgment. Although Costa's counsel cross-examined Clark at trial, he stated that he was not doing so in an adversarial position. Thus, no party at trial questioned Clark's qualifications or testimony. It was properly up to the trial judge to rule that Clark was not qualified to construe this type of policy or its language