WILLIAM WALSH *vs.* JOHN H. REARDON & others.

Suffolk. January 13, 1931. — February 24, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Labor Union,* Suspension from membership. *Voluntary Association.*

Where the constitution of a national labor union gave its general executive board no general jurisdiction as a trial board, but merely jurisdiction to hear appeals by a member of a local division aggrieved by action thereof taken after compliance with certain prescribed procedure including notice of charges to the member, the general executive board, without notice to a member and without previous action by his local, had no power to suspend him from membership in the union and the local on the ground of his having circulated false and slanderous stories concerning an officer of the union in contravention of the constitution: action of that character by the board was void and the member was entitled to relief in a suit in equity for his reinstatement in the union.

BILL IN EQUITY, filed in the Superior Court on September 30, 1924, and afterwards amended.

The suit was referred to a master, material facts found

by whom are stated in the opinion.  By order of *Lummus,* J., there were entered an interlocutory decree sustaining certain exceptions to the master's report and otherwise confirming it; and a . final decree adjudging that "the action of the General Executive Board of the Amalga-- mated Association of Street and Electric Railway Employees of America in suspending the plaintiff from membership in Local Division No. 589 of said association was unauthorized, and is void and of no effect," and ordering that the plaintiff, upon payment of all unpaid dues and assessments, be reinstated as a member in good standing of said local division.  The defendants appealed from the final decree.

Sections 70 and 72 of the constitution of the association were as follows:

Section 70.  "When any charge or charges are preferred against any member or members, such charge or charges shall be in writing, signed by at least five members in good standing, and such charge or charges shall be brought before the regular meeting.  After the hearing of the charges, if the L.[ocal] D.[ivision] determines by a majority vote that the charges are worthy of investigation, they shall, by motion, be referred to the executive board or to a regular trial committee of five members, as the L. D. may determine.  The trial board shall meet in three days after the case has been referred to it and take up the hearing and continue as speedily as possible until the entire case is disposed of.  Full notice shall be given to all parties as to the time and place where the trial board shall meet to hear the case.  The accused member or members shall have the right to be represented at the trial by any member whom he or she may select as counsel.  When more than one member is accused of the same offense, the accused members shall have the right to be represented at the trial by any member whom they may select as counsel.  In case of no selection by the accused, the trial board may appoint some member to represent her, him or them.  In addition, there shall be appointed one member to serve as prosecutor.  The accused shall have the right to examine all evidence and witnesses testifying in the case and

be permitted to produce such witnesses and evidence as deemed best in their own behalf. Upon the trial board's assembling, if it be other than the executive board, it shall organize by selecting a chairman and secretary. The secretary of the trial board shall keep a careful record of the entire trial and when reports are submitted to the L. D. he shall submit his report with all the evidence and information to the secretary of the L. D., who shall file the same for future reference. The trial board's decision shall be submitted to the L. D. at its first regular meeting after the case has been decided, without it be, in the opinion of the trial board, necessary to call a special meeting. In case of a special meeting at least three days' notice shall be given, so that all members are thoroughly informed as to the time and place of meeting. The accused shall have the right at the meeting of the L. D. to again defend himself and to present his case to the L. D. if he desires. The majority vote of the L. D. shall decide the contest.

"Where a member is reported for slandering, falsifying or using language that is detrimental to this Association or any of its members, in violation of his obligation, the local President and Executive Board are hereby empowered to summon such member before a meeting of the local Executive Board to investigate and ascertain the truth of such report. In case such report be found untrue, said member shall be paid for all time lost, from the funds of the L. D. If the member refuses to appear before the local Board for such investigation, such member shall stand suspended from this Association, until such time as he does appear. If, upon investigation, the Executive Board determines that there is sufficient evidence to so warrant, charges shall be preferred against him in compliance with the Constitution and Laws of the Association."

Section 72. "Any member or members feeling that they have been unfairly dealt with by the L. D. have the right of an appeal to the I.[nternational] P.[resident], the G. E. B., and from the G. E. B. to the regular Convention of the Association (after the L. D. has given its final decision in the case or cases). Parties making appeals must set forth

their complaints clearly in writing, giving all information and evidence bearing upon the case. They must state in the appeal whether it is to be the I. P., the G. E. B. or the Convention. They shall also file a copy of their appeal with the Secretary of the L. D. before the appeal can be entertained or considered. All appeals must be forwarded through the I. P. The secretary of the L. D., on request from the I. P., shall forward to him a record of the trial, the minutes of the meetings at which the case was discussed and acted upon, and such other evidence and information as may be in the possession of the L. D. or the I. P. may desire, and a copy of same shall be supplied to the appellant. The parties making the appeal shall forward also such evidence and information as the I. P. may from time to time require from them. The decision of the I. P. when approved by the G. E. B., or the decision of the G. E. B. when made will stand as the decision of the Association until reversed by the Convention. An appeal must be made within three months after the L. D. has passed upon the case. Otherwise it shall not be entertained or considered by the International officers."

The case was submitted on briefs.

*J. H. Vahey*, for the defendants.

*John J. Walsh*, for the plaintiff.

PIERCE, J. This is a bill in equity brought to compel the reinstatement of the plaintiff as a member of the Boston Carmen's Union from which he is alleged to have been unlawfully suspended. By an interlocutory decree the exceptions to the master's report were overruled, except certain of the plaintiff's exceptions which were sustained; as so modified the report was confirmed. No appeal was taken by either party from the interlocutory decree and the case is before this court on the appeal of the defendants from the final decree.

The master found, in substance, that the Amalgamated Association of Street and Electric Railway Employees of America, hereinafter called the amalgamated, and the Boston Carmen's Union, division 589 of the amalgamated, hereinafter called the local, are voluntary associations, and

are represented in this litigation by the defendants. The amalgamated is the parent body and includes the local. One cannot belong to a local without belonging also to the amalgamated but one may be a member of the amalgamated without belonging for the time to any local. The amalgamated is governed by a written constitution and general laws to which the local is subject, and the local has its own written by-laws. It is not in dispute that membership in said amalgamated and in the local is of value to any person who belongs to said organization by reason of the rights which members of the local have to death, disability, sick, old age, strike and walk-out benefits, all of which are denied and lost to a member who has been expelled or suspended from membership in said amalgamated and in the local. The local was organized in 1912, and the plaintiff joined this association "some time afterward and took certain obligations." He held the important office of business agent for three terms — 1920, 1921, 1922. He was defeated for reëlection to that office and proved a bad loser. He did not in good faith return to the ranks and do his best for the local and for the officers who were guiding the local. He was largely responsible for intemperate and bitter language at meetings of the local. He attended its meetings in a belligerent spirit and criticized the officers repeatedly and continuously. There was turmoil and altercation at meetings which were brought about largely by his attitude and disposition. Business progress at meetings had been seriously interfered with. While these conditions at meetings were extremely annoying to the local officers, no charges against the plaintiff were ever made officially and his conduct at meetings was never taken up officially.

At a meeting held on June 12, 1924, at which the defendant Reardon, in his official capacity as a member of the general executive board of the parent body, was present at the request of the local, the plaintiff acted in a "belligerent manner and made a vituperative attack upon the committee generally and also a personal one,

in which he seriously reflected upon the integrity of the defendant, John H. Reardon."

In consequence of the plaintiff's utterances the defendant Reardon withdrew from further assistance to the local and made a report to that effect to the international president. Thereafter the international president, "W. D. Mahon," wrote the local president a letter dated June 17, 1924, in which he said: ". . . I want to point out to you that it is the duty of a Local Division through its officers, Executive Committee and membership to protect an International Officer against the insults and slander and abuse of any individuals or set of individuals that set themselves up to abuse, slander and vilify Officers and members and in this case it is the duty of your Division to take this matter up and properly deal with those who are guilty of the slander and abuse and to deal with them as the laws of the Organization require. Therefore, I again advise you that I have fully enforced the position of Executive Board Member J. H. Reardon, and no other officer will be sent to your Division until the proper apologies are made. to Brother Reardon, and when the apologies are made Brother Reardon will return there and assist your Division in every way he can — if the presence of an International Representative is required."

Subsequently to receiving this letter, at a special meeting of the local executive board in Boston, the defendant Charles H. Clark explained that the board was called in session to take action upon a communication received from the international president in reference to what had taken place at the meeting of the division on June 12. After discussion the board made the following recommendation: "Your Executive Board recommends that this Division go on record as repudiating the accusations, abuse and insults made against the International Association, General Executive Board Member Reardon, officers and members of the Agreement Committee, by Brother William Walsh at the last regular meeting of the Division, and that the International President be requested to assign an Inter-

national Officer immediately to continue the adjustment of the new agreement." On June 23, 1924, at a special meeting called for the purpose of acting on the communication from the international president, it was voted to concur in this recommendation of the executive board.

At a meeting of the local on July 10, 1924, which was addressed by the international president on the subject of the plaintiff's conduct at the meeting of June 12, the plaintiff also addressed the members and declared " that the International President was surrounded by Judases and also criticized the committee and the defendant Reardon."

The international president called a meeting of the general executive board of the amalgamated at Detroit, Michigan, to meet August 4, 1924. At this meeting the international president and the defendant Reardon narrated to the board the various things which each had heard the plaintiff say at the several meetings hereinbefore referred to. At an adjournment of this meeting, on August 7, 1924, it was declared to be " the sense of the Board, and the Board was so convinced, that the said Wm. Walsh is guilty of violation of his obligation to Div. No. 589, and the Amalgamated Association, which obligation is taken by applicants to membership in the Association," and it was further voted that " it is the sense of this Board that the Division Association in its meeting and in the conduct of its affairs should be relieved of such obstructive and deterrant intrusions, and that said member Wm. Walsh shall stand suspended from membership of the Amalgamated Association of Street and Electric Railway Employees of America, and/or Div. No. 589, of said Association, until such time as he may retract his alleged wrongdoings in writing to this General Executive Board, or supply evidence contradictory to the sustaining of the evidence at present before the Board, in which event further hearings and deliberations will be given to the case by this Board, or by the proper authorities of the Association, and it is so ruled and directed by this General Execu-

tive Board, and the Secretary is instructed to forthwith notify the International President and Div. No. 589, of the A. A. of S. and E. R. E. of A., with instructions to said Div. No. 589, to at once comply with this decision of the General Executive Board in the case, and to so notify said Wm. Walsh that he is so suspended from Membership in this Association. Further, that a copy of this decision be forwarded by the Secretary to the said Wm. Walsh that he may be further properly notified of this action of this Board."

The report of the master shows that copies of the full decision of the executive board were sent to and received by the local president, and by William Walsh, and that on August 11 or 12 the plaintiff further received the following letter from the defendant Michael J. Walsh, recording secretary of the local: " In accordance with instructions contained in a communication received from the Secretary of the General Executive Board of the Amalgamated Association of Street and Electric Railway Employees of America, a copy of which has been forwarded to you, you are hereby notified that you stand suspended from membership in the Amalgamated Association of Street and Electric Railways Employees of America, and Division 589 thereof, until such time as you may retract your alleged wrongdoing in writing to the General Executive Board, or supply evidence contradictory to the sustaining of the evidence at present before the Board, in which event further hearings and deliberations will be given to the case by the proper authorities of the Association."

It further appears that on August 23, 1924, the international president wrote a letter to the financial secretary of the local directing him " to suspend . . . Walsh's card and to collect no further dues or assessments from him until further instructed by the General Executive Board." The financial " Secretary-Treasurer " on September 11, 1924, refused to receive from William Walsh dues for the month of September, 1924, and returned the money order for them to Walsh.

The master finds that the plaintiff took no appeal from the decision ordering his conditional suspension to the convention of the amalgamated which was held in Montreal in September, 1925, pursuant to the general laws of the association; that the plaintiff was not suspended from his membership in the local by any act of the local itself, except in so far as notice to the plaintiff by the secretary and treasurer of the local, read and approved at a meeting of the local, may be considered a suspension. The master further finds that no charges in writing were preferred against the plaintiff by the local; that there was no vote of the local suspending the plaintiff from his membership therein except so far as notice above referred to may be considered a vote suspending him; that the plaintiff was not notified that any charges against him were to be or were being considered by the general executive board (amalgamated) except so far as posting in car barns of the letter of the international's president to Clark may be considered a notice; that no minutes or records of any action of the local or of the local executive board concerning the suspension by the local of the plaintiff were made or kept, except so far as notice mentioned may be so considered; that there was no decision of the local against the plaintiff; that there were no records of the local such as are mentioned in § 72 of the constitution of the amalgamated and no minutes of meetings at which charges against the plaintiff were discussed or acted upon in accordance with said section; that no question affecting the suspension of the plaintiff was ever submitted to the general executive board in legal form by the plaintiff or by his division; that no proceedings were had in conformity with § 70 of the constitution and the general laws and no proceedings thereunder were authorized by the local; that no proceedings were had under § 47 of the written by-laws of the local in relation to the circulation of false and slanderous stories to the injury of any officer or member of it.

Under the constitution and the general laws of the

amalgamated and under the by-laws of the local, both of
which are before this court, and upon the facts found and
reported by the master, which are taken to be true, it is
plain the general executive board of the amalgamated had
no authority under its constitution and general by-laws to
consider complaints against the plaintiff " based upon the
charges of slanderous and willful traducing and alleged
willful aspersions of the officers and Agreement Committee
of Div. No. 589, of the A. A. of S. and E. R. E. of A., and
the International Officer associated therewith, through
insinuated, false conduct and injurious statements designed
to tarnish the reputation and calumniate, malign and
vilify said officers and Agreement Committee of Div. No.
589, with a design to influence the members in opposition
to the regular procedure of said officers and Committee
in the performance of their duties, and to dissuade from
them the support and concurrence of the membership in
the way of creating a lack of associate confidence in the
conduct of the officers of the Division Association." Nor
if it had such jurisdiction could it lawfully exercise it
without notice to the plaintiff and an opportunity given
him to be fully heard upon the charges preferred against
him at a proper place and at a reasonably convenient
time. It is manifest that under said constitution and
general laws the general executive board of the amalga-
mated has no general jurisdiction as a trial board, and
that it is given under § 72 of its constitution appellate
jurisdiction to hear appeals only from a member or
members of a local division " feeling that they have been
unfairly dealt with by the " local division. The by-laws
of the local, § 46, read: " If any member of this Divi-
sion shall be found guilty of conduct contrary to the
Constitution and By-Laws of the International Association
or this Division, or in violation of its principles as set forth
in its obligations, or shall be found guilty of any dishonest
or immoral act or practice injurious to himself, his family
or to society by which this Division may be scandalized,
he shall be fined, suspended or expelled." Section 47 pro-

vides: "No member shall circulate false or slanderous stories to the injury of any officer or member of this Division in any way, and it shall be the duty of any member who hears any one or learns of slanderous stories being circulated regarding members or officers to report same to either the officers or the Division in regular meeting assembled. And where members are reported for circulating such false and slanderous stories they shall be brought before the regular meeting of the Division to answer upon the same. And if the parties circulating or telling these stories cannot give satisfactory proof as to where they learned or received them, they shall themselves be deemed guilty of creating or circulating these stories and they shall be expelled from this Division." It follows that the act of the general executive board in suspending the plaintiff from membership was unauthorized, void and of no effect. The plaintiff had no right of appeal to the convention held in Montreal in September, 1925, because such a right under § 72 of the constitution was given to an aggrieved member or members of a local division after the local division "has given its final decision in the case or cases" and because an "appeal must be made within three months after the . . . [local division] has passed upon the case. Otherwise it shall not be entertained or considered by the International Officer."

*Decree affirmed with costs.*