JOHN MALLOY & others *vs.* JOHN CARROLL & others.

Suffolk.   May 8, 1933. — July 6, 1934.

Present: RUGG, C.J., PIERCE, FIELD, & DONAHUE, JJ.

*Labor Union. Damages,* For tort. *Equity Pleading and Practice,* Parties, Decree. *Evidence,* Res gestae.

In a suit in equity against the officers and members of a labor union to establish and secure the rights of the plaintiffs as members of the union, it appeared that the plaintiffs had been wrongfully excluded therefrom and it was decided by this court that a decree enjoining the defendants from interfering with such rights of the plaintiffs was proper. Thereafter an interlocutory decree ordering the reinstatement of the plaintiffs as members of the union and enjoining the defendants in accordance with such decision was entered, and the damages sustained by the plaintiffs by reason of the unlawful acts of the defendants were assessed. *Held,* that

(1) The plaintiffs were not barred from recovery of damages by the circumstance that, from about the time of their exclusion from the union to the time of their reinstatement in accordance with the interlocutory decree, they united in an organization of their own, maintained headquarters, elected officers and generally held themselves out as the union;

(2) There was no merit in a contention by the defendants that,

because they had not been adjudged in contempt for violation of an earlier interlocutory decree, entered after the time of the plaintiffs' wrongful exclusion and enjoining the defendants from interfering with the plaintiffs in certain respects, no damages should be assessed for any period after the entry of such earlier decree;

(3) The general theory of damages being that the plaintiffs should be put in the same position as that in which they would have been had they not been wrongfully excluded from the union, dues and assessments which would have been levied upon each plaintiff during the period of his exclusion should be deducted in ascertaining his damages;

(4) Unpaid dues and assessments owed by certain plaintiffs at the time of their exclusion also should be deducted from those plaintiffs' damages, notwithstanding that the decree ordering reinstatement, although it made payment of such dues and assessments a condition precedent to the reinstatement of those plaintiffs, did not make payment thereof a condition precedent to their recovering damages;

(5) In the circumstances, it was proper to include in the total of each plaintiff's damages a fair and reasonable sum as that plaintiff's share of the fees of counsel who represented the plaintiffs in the suit;

(6) Such allowance for counsel fees was not rendered improper by the circumstance that the fees represented services of counsel in the proceedings for the assessment of damages as well as in the previous proceedings in the suit;

(7) It was not necessary to such allowance of counsel fees that it be proved that they were actually paid to counsel; it was enough that the amount was reasonable and that the plaintiffs were obligated to pay the fees;

(8) The rights and privileges as members of the union, of which the plaintiffs had been deprived wrongfully, were of calculable value; and it was proper to take the loss thereof into account in assessing damages;

(9) In calculating the several plaintiffs' loss of earnings during the period of their exclusion, it was improper to apply a formula, whereby a plaintiff's damages in this respect were calculated as the difference between his actual earnings during such period and the average earnings during such period of one employed in the same occupation as the plaintiffs, in the cases of two plaintiffs who were elderly men and not of average working capacity, one of whom obtained all the work which he was willing to do during such period, and the other of whom worked at his trade during a part of that period and during the remainder thereof performed a different sort of work, which was satisfactory to him; neither of such two plaintiffs appeared to have suffered a loss of earnings through the wrongful acts of the defendants;

(10) The loss of earnings by a plaintiff, who worked or endeavored to obtain work in certain weeks during the period of exclusion but who made no effort to obtain work in the other weeks thereof, was to be determined by calculating the amount which an average worker at the plaintiffs' trade would have earned in the weeks in which that plaintiff worked or endeavored to obtain work and by deducting

from such amount the sum which that plaintiff in fact earned in those weeks.

A provision of the final decree in the suit in equity above described, which ordered the entry of judgments for the several plaintiffs against the defendants for the amounts of damages awarded and costs and that executions issue, was improper; the proper order would have been that the defendants pay the amounts awarded and costs.

In the suit in equity above described, only a few of the defendants were designated by name, the remaining defendants being joined as members of the union and described as "too numerous to be mentioned." It was not contended that the unnamed defendants were not properly joined as parties. It appeared that the defendants generally participated in the wrongful acts affecting the plaintiffs, but there was no general finding as to the defendants' names. The provision of the final decree with respect to damages ran against "the defendants" generally without designating them by name. *Held,* that

(1) The decree was ineffective as against the unidentified defendants; their identity was a matter for judicial determination and the omission could not be supplied by the clerk of court;

(2) The names of all the defendants who were to be ordered to pay damages must be ascertained and inserted in the final decree.

At a hearing of the suit in equity above described, testimony, as to the reasons stated by employers or their agents at times when they discharged certain plaintiffs who had secured employment during the period of their exclusion from the union and by employers or their agents at times when they refused to employ certain plaintiffs during that period, in substance that the discharges or refusals to hire were for the purpose of avoiding trouble with the union, was admissible because such statements of reasons accompanied those acts and explained them.

BILL IN EQUITY, filed in the Superior Court on June 11, 1928, and afterwards amended, by John Malloy, Martin D. Farrell and Thomas Skelton, "who bring this bill in behalf of themselves and of the many other officers and members of the Boston Cement & Asphalt Finishers' Union, Local 534, a voluntary association," to establish and secure the rights of the plaintiffs as members of the Local.

The suit previously was before this court upon a report by *Keating,* J., of an order for a decree giving the relief described in the opinion to "the plaintiffs." In a decision reported in 272 Mass. 524, this court ordered, "Decree to be entered as ordered."

On November 21, 1930, an interlocutory decree was entered by order of *Keating,* J., giving such relief to John Malloy, Martin D. Farrell and seventeen other named per-

sons, and recommitting the suit to a master to find the damages sustained by the "several plaintiffs" by reason of the unlawful acts of the defendants.

Further proceedings are described in the opinion. The final decree ordered the reinstatement in the Local of John Malloy and fourteen other named persons, the plaintiff Farrell having died, and "that judgment be entered against the defendants, in favor of the respective plaintiffs in the amounts hereinafter set forth," and thereupon stated the names of John Malloy, the personal representative of the plaintiff Farrell, and sixteen other persons, and the amount for each.

The defendants appealed from certain interlocutory decrees and from the final decree, which was entered by order of *W. A. Burns,* J.

*P. A. Hendrick,* for the defendants.

*J. B. O'Hare,* for the plaintiffs.

DONAHUE, J. The plaintiffs brought a bill in equity in the Superior Court to establish and secure their rights as members of the Boston Cement & Asphalt Finishers' Union, Local 534, a voluntary association hereinafter referred to as the union. The defendants as described in the bill are (a) four named persons "and other persons too numerous to be mentioned, purporting to be officers and members" of that union; (b) four named persons "individually and as they are officers and members of the Building Trades Council of Boston and Vicinity, a voluntary association" the members of which are too numerous to be set forth herein; and (c) three named persons individually and "as they are officers and members of the Operative Plasterers and Cement Finishers International Association of the United States and Canada." An answer was filed by the four persons named in the first group of defendants "for themselves and in behalf of the officers and members" of the union; by the United Building Trades Council of Boston and Vicinity and by the Operative Plasterers' & Cement Finishers' International Association of the United States and Canada. The case was referred to a master and after the confirmation of his report a judge

of the Superior Court made an order for the entry of a final decree which provided that the defendants be restrained from interfering with the plaintiffs in the enjoyment of their rights and privileges as members of the union, and reported the case to this court upon a stipulation that, if he was warranted in ordering the entry of such a decree, that decree should be entered; otherwise a decree was to be entered dismissing the bill. The rescript from this court was "Decree to be entered as ordered." (See *Malloy* v. *Carroll*, 272 Mass. 524.)

Thereafterwards an interlocutory decree was entered in the Superior Court which ordered that the plaintiffs be restored as members of the union in good standing "upon payment of any and all unpaid dues outstanding against them individually as of the date of May 11, 1928, according to schedule annexed" and provided that any plaintiff who failed to pay such dues on or before May 1, 1931, should forfeit his rights to restoration to membership. By the decree the plaintiffs were ordered to discontinue any independent organization conducted by them and to refrain from holding themselves or such organization out to the public as the union; the defendants were restrained from interfering with the plaintiffs in the enjoyment of their rights and privileges as members of the union. The case was recommitted to a master to hear the parties and their witnesses and report to the court the amount of damages, if any, sustained by the several plaintiffs by reason of the unlawful acts of the defendants and the amounts, if any, owed by the several plaintiffs to the union for dues, assessments and fees from May 11, 1928, up to the date of the decree, which was November 21, 1930, and to state the account between the several plaintiffs and the defendants.

The master filed what is hereinafter referred to as the first report, in which he found the amount of damages sustained by eighteen of the plaintiffs because of wrongful acts of the defendants in interfering with the employment secured by certain of the plaintiffs and in orally or in writing publishing of the plaintiffs that they were "scabs" or that they were nonunion men. Objections to the report were filed both

by plaintiffs and by defendants. Certain of the objections of each were sustained and others were overruled. The plaintiffs and the defendants filed motions to recommit the report. The defendants' motion was denied and the plaintiffs' motion was allowed in part. The purposes of the recommittal as stated in an interlocutory decree were (a) to determine the amount of damages sustained by the several plaintiffs by reason of the loss of rights and privileges as members of the local and international unions during the period from May 11, 1928 (when the plaintiffs were excluded from the union) and November 21, 1930 (when the decree ordering their reinstatement as members was entered), and to report the amount so found if the damage for such loss exceeded the amount of $300 found as an item of damage to each of the eighteen plaintiffs for anguish of mind in the first report; (b) to strike from the report the amounts found to be due from the several plaintiffs to the union for dues, assessments and fees from May 11, 1928, to November 21, 1930 (which amounts the master had in his first report deducted from the amounts of the damages he found for the plaintiffs); (c) to strike from the report the amounts found by the master to have been paid by the several plaintiffs for the support of the independent organization which they conducted during the period of their expulsion from the union; (d) to determine the amount of damages sustained by four of the plaintiffs by reason of loss of earnings due to unlawful interference by the defendants from May 11, 1928, to November 21, 1930, "by subtracting the amount earned by [each such] . . . plaintiff in this period from the average earnings of a cement finisher, to wit, $4,048.49, as determined by the master" in the first report.

The master filed a second report, and objections filed thereto by the defendants were overruled. The defendants seasonably claimed an appeal from every order or decree adverse to them including the final decree. This among other things ordered that "judgment be entered against the defendants" in favor of each of eighteen named plaintiffs for various stated amounts as damages and for stated

costs, and "that execution issue therefor" to each of those eighteen plaintiffs. It is convenient in the consideration here of the questions argued to follow the order in which they appear in the defendants' brief.

1. The defendants contend that the plaintiffs are entitled to recover no damages at all because from a time shortly before their wrongful exclusion from the union on May 11, 1928, until their reinstatement by decree of court on November 21, 1930, they united in an organization of their own, maintained headquarters, elected officers and generally held themselves out as Local 534. These facts did not prevent the plaintiffs from receiving relief through an injunction restoring them to membership in the union (*Malloy* v. *Carroll*, 272 Mass. 524) and they do not bar the further relief of money damages. The wrongful deprivation of the advantages of membership in the union did not require them passively to forego such advantages as might be gained from an independent organization of their own. Most of what the plaintiffs did was forced upon them by the wrong of the defendants. The plaintiffs' acts did not increase the amount of damage resulting from the defendants' wrong; on the contrary, since the independent organization assisted them in procuring employment, the amount of the damages which the defendants must now pay for that wrong was lessened.

2. By an interlocutory decree entered in this case on July 27, 1929, the defendants were restrained from "interfering with the plaintiffs in the performance of their usual trade and . . . influencing . . . persons likely to employ the plaintiffs not to employ them . . . ." The defendants contend that, because there has been no adjudication that the defendants were in contempt for violations of that decree, in no event should damages be found for any period later than that date. We see nothing in that contention. Not only might there have been acts violative of that decree which were not prosecuted as contempts, but wrongful acts done before that date might have had a continuing effect long after the decree was entered.

3. Following the mandate of the decree recommitting

the case to the master after the filing of his first report, he struck therefrom the amounts which he had found due from each plaintiff to the union for dues, assessments and fees accruing or levied during the period between May 11, 1928, and November 21, 1930, during which time the plaintiffs were wrongfully excluded from membership in the union. He had found these amounts in accordance with the direction in the earlier decree referring the case to him for the assessment of damages, and in his first report had deducted them from the amounts found by him as the damages sustained by the several plaintiffs. In each report one item of damages found by him was the loss of earnings by the plaintiffs due to the wrongful acts of the defendants. In the second report, in obedience to the decree of recommittal, he found the amount of damages sustained by the plaintiffs by reason of the loss of their rights and privileges as members of the union, of which the defendants had deprived them for the period of over thirty months. The general theory of damages applied was that the plaintiffs should by the award of damages be put in the same position as if the wrongful acts of the defendants had not been committed and the plaintiffs had remained recognized members of the union. If the plaintiffs had been permitted to remain during the period in question recognized members of the union, they would have been obliged to pay the union charges for the rights and privileges incident to such membership. By the final decree they are given damages for the loss of those rights and privileges and also for any loss in earnings sustained through the wrongful acts of the defendants, computed on the basis of what the average cement finisher would have earned during that period if not wrongfully interfered with by the defendants. Unless the amounts that the plaintiffs severally would have paid for union charges during the same time are deducted from the damages they sustained according to such computation, the plaintiffs will receive more than compensation for the wrong done. The amount of the assessments, dues and fees which the master found in his first report would have been paid by the several plaintiffs if they had not been excluded

from membership should be deducted from the amount of damages found to have been sustained by the several plaintiffs.

Two of the eighteen plaintiffs who were awarded damages, Joseph F. Malloy and Oscar Benson, have not paid the dues and assessments owed by them at the time they were excluded from the union. The payment of these union charges was required as a condition precedent to reinstatement to membership by the decree which was entered after rescript. The decree did not make such payment a prerequisite to the award of damages, but for the reasons stated in the preceding paragraph we think that the method employed in computing damages requires that the amount of these dues and assessments which they would have been obliged to pay to retain their standing as members also should be deducted from the amount of damages found to have been sustained by them.

4. The damages awarded by the final decree to each of the eighteen plaintiffs include the sum of $250 which the master found to be a fair and reasonable amount as each plaintiff's share of the fees of counsel who represented the plaintiffs "in the trial of the issues raised by the bill of complaint, in the Supreme Judicial Court where certain questions of law raised by the counsel for the defendants were heard and argued and in the hearings before . . . [the] master relative to assessment of damages."

As a general rule taxable costs are considered full compensation to a prevailing party for the expense of conducting litigation even though such costs are only nominal and wholly inadequate. *Dahlstrom Metallic Door Co.* v. *Evatt Construction Co.* 256 Mass. 404. *Fuller* v. *Trustees of Deerfield Academy,* 252 Mass. 258. But it is well recognized in this Commonwealth that the rule is not one of universal application. *Dahlstrom Metallic Door Co.* v. *Evatt Construction Co.* 256 Mass. 404. *Sears* v. *Nahant,* 215 Mass. 234, 239. *Fitzgerald* v. *Heady,* 225 Mass. 75, 77. See also *Pond* v. *Harris,* 113 Mass. 114; *New Haven & Northampton Co.* v. *Hayden,* 117 Mass. 433; *Westfield* v. *Mayo,* 122 Mass. 100; *Faneuil Hall Ins. Co.* v. *Liverpool & London &*

*Globe Ins. Co.* 153 Mass. 63. In actions based on wrongful
conduct of the defendant, where the wrong is of such a
character that the proper protection of the plaintiff's rights
necessarily requires him to employ counsel to gain redress
for the wrong, he may recover as an element of damage
reasonable counsel fees. In *Wheeler* v. *Hanson,* 161 Mass.
370, 376, where counsel fees which had been incurred by the
plaintiff in defending himself in a prosecution maliciously
instituted by the defendant were recovered, it is said:
"when the plaintiff has, in consequence of the wrongful
conduct of the defendant, been put to expense in the em-
ployment of counsel, the amount so paid is an element of
damage in an action against the defendant arising out of
such wrongful conduct." In *Stiles* v. *Municipal Council
of Lowell,* 233 Mass. 174, the plaintiff in an action of tort
recovered the amount reasonably paid by him as counsel fees
in the successful prosecution of mandamus proceedings to
obtain reinstatement to the office of city treasurer from
which he had been wrongfully removed by the defendants.
At page 183 it is said: "He was obliged to resort to the court
for redress and to employ counsel to that end. Those pro-
ceedings were rendered imperative, in order that he might
protect his rights, by the tortious conduct of the defendants.
The plaintiff was not obliged to incur these expenses through
any misfeasance or contract of his own, but wholly by
reason of the wrongdoing of the defendants, of which these
expenses were the immediate and direct result." See also
*Ashton* v..*Wolstenholme,* 243 Mass. 193.

In the cases cited in the last paragraph, where counsel
fees were recovered as damages, the services of counsel
were rendered in prior proceedings and not in the action
where the counsel fees were recovered. That fact in our
opinion does not make the principle of those cases here
inapplicable. In those where the plaintiff was the prevail-
ing party in the earlier proceedings and where the counsel
fees were earned, the statutory costs which were there
awarded him would, if the general rule as to the effect of
statutory costs hitherto stated were applicable, measure
the full amount of reimbursement for expenses of litigation

which the plaintiff could obtain in that proceeding and, in reason, would be a complete bar to the recovery of those counsel fees in any future independent proceedings. In *Stiles* v. *Municipal Council of Lowell*, 233 Mass. 174, the prior proceedings were petitions for mandamus, where by statute the successful petitioner's "damages shall be assessed" and the judgment includes costs. G. L. (Ter. Ed.) c. 249, § 5. The petitioner was awarded costs in the mandamus proceedings (page 176). If those statutory costs furnished the entire remuneration to which the petitioner was entitled for the expense of the counsel fees there earned, he should not have been allowed to recover them merely by becoming the plaintiff in an action for damages for the wrongful conduct of the defendants which made the bringing of the prior action necessary. (See *Fitzgerald* v. *Heady*, 225 Mass. 75.) The case of *Stiles* v. *Municipal Council of Lowell* rests not on the fact that the services of counsel were rendered in a different action than the one in which recovery was allowed, but upon the fact that the wrong of the defendants was of such a character that it necessitated the employment of counsel to give the plaintiff redress.

We think the present case comes within the governing principles of that decision. The present plaintiffs were wrongfully deprived of membership in the union. They were compelled to employ counsel to regain the membership which was rightfully theirs. They were not obliged in a matter so vital to the earning of a livelihood, then and for the future, to be content with merely money damages. They had the right to a union status as well as to damages suffered during the period in which they were deprived of that status, were publicly held out as nonunion men, their chances of getting employment were lessened and the employment which they were able to obtain was interfered with. Their recovery of a union status lessened the amount of money damages for which the defendants by their wrongful conduct made themselves liable. The character of the wrong was such that the general rule as to the effect of the statutory provisions as to costs does not apply.

The master's finding of the amount of damages for counsel fees includes without differentiation fees for services rendered by counsel after the rescript from this court in the proceedings for the determination of damages. If these were the only fees involved the general rule might perhaps be invoked to prevent the recovery of anything but the taxable costs. The wrong as found by the master did not consist merely of the vote of expulsion or of any single act. The formal exclusion from the union was accompanied and made effective by contemporaneous and later public statements that the plaintiffs were "scabs" or nonunion men and in some instances by wrongful interference with actual employment which had been obtained. It is not practical to divide with nicety the whole wrong into its component parts and determine their separate effects upon the plaintiffs, or, in the matter of compensation for the wrong, to distinguish between the expense for services of counsel rendered prior to the time of the entry of the decree of court, which as of its date restored the plaintiffs' rights and privileges, and the expense of necessary services of counsel to obtain compensation for the damages sustained by the plaintiffs in the preceding period of their exclusion. We think that the character of the wrong and of the resulting damage was such that there was no error in the master's finding the entire expense for the services of counsel fees to be an element of damage.

It is contended by the defendants that, in the absence of any finding as to what was actually paid or agreed to be paid to counsel, the master's finding of damages on account of counsel fees should be disregarded. It is not necessary in order to recover counsel fees that it be proved that they were actually paid to counsel; it is enough if the amount be reasonable and the plaintiffs were obligated to pay them. *Stern* v. *Knowlton*, 184 Mass. 29. There is nothing in the record to indicate that the amount found has hitherto been questioned. The only objection to the report pertinent to this subject was to the allowance of any counsel fees at all. The evidence was not reported and we cannot upset the master's findings as to each plaintiff that "If, as a

matter of law, this plaintiff is entitled to recover a fair and reasonable amount as his share of counsel fees" he was entitled to recover the amount stated.

5. The decree recommitting the case to the master required him "To determine the amount of damages sustained by the several plaintiffs by reason of the loss of their rights and privileges as members of the Local and the International during the period from May 11, 1928, to November 21, 1930, and to report the amount . . . if damages for such loss" exceeded the sum of $300 found in the first report for anguish of mind. The master found that the damage to each of the plaintiffs as to this element was $100. In the thirty months' period that the plaintiffs were excluded from membership in the union they were deprived of certain rights and privileges incidental to membership not included in other items of damage found by him. Recognized membership gave them the right to have a voice in the conduct of the organization, in the shaping of its policies and in the election of its officers; the privilege of attending meetings and there associating with their fellow craftsmen whose interests the union was formed to serve; the opportunity to participate with others in lawful efforts made by the union as a whole to improve the common working conditions and increase the wages of its members; in short, the "right to enjoy whatever advantages membership in this union would bring them in their calling." *Barbrick* v. *Huddell*, 245 Mass. 428, 436. These rights and privileges are of calculable value. Their loss through wrong of the defendants is a proper element of damages. The evidence is not reported and we cannot say the master's determination of the amount of damage was not correct.

6. The master found in his first report that the following plaintiffs sustained no loss of earnings because of the defendants' conduct: John J. McAvoy, Farrell and Walsh; and that the plaintiff William Malloy sustained damages for loss of earnings amounting to $872.24. The interlocutory decree of recommittal directed the master to determine the amount of damage for loss of earnings by each of these four plaintiffs by subtracting the amount actually

earned by each during the period of his exclusion from the union, from the amount of the average earnings of a cement finisher in the same period, to. wit, $4,048.49 as determined by the master in his first report. In his second report the master obeyed the mandate of the decree, applied the formula given and found certain sums due each of the four plaintiffs as damages for loss of earnings.

On the subsidiary findings of the master the rule of damages prescribed by the decree of recommittal and applied by the master in his second report was not properly applicable in any of these four instances. McAvoy and Farrell were elderly men and therefore not average cement finishers in capacity for work and not as likely to obtain work at their trade as younger men. Neither looked for employment except through the independent association which the plaintiffs had formed. McAvoy during the period with which we are here concerned earned $1,845.25, but he made no effort at all to secure employment during the winter time. Farrell earned at his trade during that period $843.25. Between the jobs on which he worked at his trade he worked as office manager for the independent organization formed by the plaintiffs. Although neither of the two was an average cement finisher, the formula of damages applied by the master included as a standard the earnings of such a worker. It was not a proper rule to apply to these men. One of them obtained throughout the period all the work he cared to do and the other entered a different kind of employment for compensation which does not appear in the report but was satisfactory to him. Neither is shown to have suffered a loss of earnings due to wrongful conduct of the defendants. The findings made by the master in his first report that these two plaintiffs sustained no damage for loss of earnings as the result of the defendants' conduct were correct. It follows that from the total amount of damages severally found for these two plaintiffs in the second report on which the final decree was based, the amount included therein as damage for loss of earnings must be deducted. The amount to be deducted from the total amount of damages awarded to McAvoy is

$2,203.04, and from the damages awarded to Farrell there must be deducted the amount of $3,205.24.

The master found that the plaintiff Walsh made no effort at all to secure employment during eleven of the one hundred thirty-two weeks comprised in the period from May 11, 1928, and November 21, 1930, and that the plaintiff William Malloy made no such effort during twelve weeks of that period. The plaintiffs are not entitled to receive damages from the defendants during such times as they made no effort to secure work. The master found the amount of earnings of an average cement finisher during the period of one hundred thirty-two weeks to be $4,048.49. We take this to mean the earnings of an average cement finisher who made reasonable effort to secure work. We think that the damages of these two plaintiffs are properly measured by ascertaining the amount which such a cement finisher would have earned if he worked for the number of weeks that these plaintiffs worked or endeavored to obtain work and subtracting therefrom the amount which the plaintiffs in fact earned between May 11, 1928, and November 21, 1930. Walsh worked or endeavored to work one hundred twenty-one of the one hundred thirty-two weeks of that period. From one hundred twenty-one one hundred thirty seconds of $4,048.49 (the amount of earnings of the average cement finisher in the one hundred thirty-two weeks), or $3,711.12, must be deducted the $3,548.92 which Walsh actually earned in that time, leaving a balance of $162.20 as his damage for loss of earnings due to the conduct of the defendants. William Malloy worked or endeavored to work one hundred twenty weeks. From one hundred twenty one hundred thirty seconds of $4,048.49, or $3,680.45, is to be deducted the amount he actually earned, $2,450.25. The difference, $1,230.20, represents the damages from loss of earnings by him which are chargeable to the defendants.

7. The final decree appealed from orders that "judgment be entered against the defendants" for the amount of damages awarded the respective plaintiffs and costs and that execution issue therefor. Since this is a proceeding in

equity a final decree should not order judgments for the plaintiffs but should order that the defendants pay the amounts awarded as damages and the costs. *Fairbanks* v. *McDonald*, 219 Mass. 291, 298. *Rubenstein* v. *Lottow*, 220 Mass. 156, 162. The decree runs against "the defendants" generally without designation by name. A voluntary association cannot be a party to litigation, *Tyler* v. *Boot & Shoe Workers Union*, 285 Mass. 54. The defendants in this case are the individual members of three different voluntary associations, the local union, the Building Trades Council of Boston and the International Association. That such members have here properly been made parties defendant has not been questioned by motion to dismiss or other pleading or at the argument before us. See *Reynolds* v. *Davis*, 198 Mass. 294, 301; *Pickett* v. *Walsh*, 192 Mass. 572, 589, 590; *Maguire* v. *Reough*, 238 Mass. 98, 100. The findings of the master warrant the conclusion that wrongful conduct of officers or members of each of the three voluntary associations contributed to cause the damages suffered by the plaintiffs and that those committing or participating in the commission of the wrongful acts or with knowledge of such acts assenting thereto are liable in damages to the plaintiffs for the injurious results. But "Mere membership in a voluntary association does not make all the members liable for acts of their associates done without their knowledge or approval, and liability is not to be inferred from mere membership." *Sweetman* v. *Barrows*, 263 Mass. 349, 355, and cases cited. Damages should not be awarded nor execution issue against a member of the voluntary associations who did not participate in any of the wrongful acts nor, with knowledge of the commission of such acts, assént thereto. The defendants contend that some of the members of the associations never knew of the wrongful acts which were done and never approved of them. The master made separate findings as to the damages suffered by the plaintiffs. He found that in certain instances, where members or officers of the local union wrongfully interfered with the employment which some of the plaintiffs had secured and where these members and officers orally

and in writing published that the plaintiffs were nonunion men, they were "acting for themselves and for the other defendants." As to the other plaintiffs he found that "the defendants" published the plaintiffs generally as nonunion men. The evidence is not before us and on the record we must take this finding to mean that the defendants generally participated in the wrongful acts.

While the report warrants the conclusion that a few named individuals were members of one or the other of the voluntary associations, there is no general finding as to the names of the members of those associations at the time of the wrongful acts. Membership in the voluntary associations is a question of fact to be determined before an award of damages against their individual members and the issuance of execution. A decree against defendants generally who became parties only as members of a class and are not identified by a finding as to their names is ineffective. Their identity is a matter for judicial determination and its lack cannot be supplied by a clerk of court in making the entry of an award of damages or in issuing an execution. The names of the members of the voluntary associations against whom awards of damages are made and executions are to issue should be determined and their names inserted in the final decree.

8. The master, subject to the exception of the defendants, admitted considerable testimony as to the reasons given by employers or their agents when discharging some of the plaintiffs who had secured employment during the time of their exclusion from the union, and by employers of labor and their agents in refusing to employ various plaintiffs in the same period. The reasons given, in substance, were that the plaintiffs were nonunion men or that the employer would be in difficulty with the local union if the plaintiffs were employed or were continued in employment. The testimony as to such statements was admissible since they accompanied the acts of discharge of the plaintiffs from employment or of refusal to employ them, and tended to explain those acts. *Elmer* v. *Fessenden,* 151 Mass. 359. *Weston* v. *Barnicoat,* 175 Mass. 454. *Peirson* v. *Boston*

*Elevated Railway*, 191 Mass. 223. *Hubbard* v. *Allyn*, 200 Mass. 166. *Stiles* v. *Municipal Council of Lowell*, 233 Mass. 174. *Brannen* v. *Bouley*, 272 Mass. 67.

9. One of the plaintiffs, Rightwell, although represented by counsel, offered no evidence of the damage, if any, he sustained. The master made no finding with reference to his damages. He had an opportunity to appear and be heard, but did not do so, and no reason therefor appears. The defendants are entitled to have the case closed so far as he is concerned by the final decree.

10. The final decree must, for reasons hereinbefore stated, be reversed and the case remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*Ordered accordingly.*