FRANK P. SULLIVAN *vs.* THADDEUS C. BARROWS & others.

Plymouth.   March 7, 1939. — May 23, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Unlawful Interference.   Voluntary Association.   Labor Union.   Equity Jurisdiction,* Internal affairs of voluntary association, Retention for assessment of damages.   *Damages,* For tort.

Power given by by-laws of a labor union to its executive board to settle all disputes referred to it included only the ordinary and incidental means of adjustment and gave them no right to interfere with a member's employment upon his refusal to pay a disputed claim by the union or to appear before them respecting it.

A contention by an executive board of a labor union that a plaintiff-member was not entitled to maintain a suit in equity against them to enjoin alleged interference with his rights because he had not exhausted his remedies within the union had no basis in fact where it appeared that the constitution and by-laws of the union provided certain remedies to a member against whom charges had been preferred, but that the board had interfered with the plaintiff's employment without having preferred charges against him.

Although it appeared that the defendants in a suit in equity did not intend further to use unlawful coercive means previously used against the plaintiff so that he was not entitled to an injunction, he was entitled to have the suit retained for repayment to him of a sum which the defendants had forced him to pay by such means and for damages caused him by the coercion.

Only the members of an executive board of a labor union were required to respond in damages caused a member by unlawful coercive measures adopted by them to compel payment of a claim disputed by him in good faith: other members of the union, not shown to have participated in such action, were not liable merely because of their membership.

BILL IN EQUITY, filed in the Superior Court on May 15, 1936, and afterwards amended.

After reports by a master, the suit was heard by *T. J. Hammond*, J., and a final decree was entered dismissing the bill.

*W. H. Gilday*, for the plaintiff.

*B. J. Killion*, (*J. F. Connolly* with him,) for the defendants.

RONAN, J. The plaintiff, a member of a voluntary, unincorporated union, known as Local No. 182, brings this bill against the officers and members of the executive board of this local, individually and as representatives of the other members of said local, alleging that the defendants have entered into a conspiracy to interfere with the plaintiff's contract of employment; that in order to enforce the payment of a claim for which he was not liable they compelled him to quit his employment until the alleged claim was paid; and that they now threaten to compel him to pay other illegal and unjust assessments, to interfere with his present employment and to suspend or expel him from membership in the union. The bill prays for injunctive relief and for damages. The case was referred to a master, whose reports were confirmed. The plaintiff's only appeal is from a final decree dismissing the bill.

The local is a trade union composed of those who are employed as moving picture machine operators in various theatres, and is a branch of the parent body known as the International Alliance of Theatrical Stage Employees and Moving Picture Operators of the United States and Canada

(hereinafter referred to as the alliance). The principal contention of the plaintiff, who has been a member of the local since May, 1927, is that he did not owe an insurance assessment amounting to $81.20, which the defendants compelled him to pay by not permitting him to work until such payment was made; that after making the payment he resumed his employment and has since been steadily engaged.

The local on June 1, 1929, entered into a contract with the Union Labor Life Insurance Company for a union group life insurance policy, insuring the lives of one hundred twenty-five members who had applied for such insurance and to whom certificates were delivered. The local at that time was composed of one hundred sixty-one members. A member of the local was appointed to handle the insurance and the local paid the insurance company each month the amount due on this group policy. The members who were insured were assessed individually for their respective ratable shares of the total monthly premiums, in accordance with the schedule contained in the policy. The plaintiff, who became an insured member in April, 1930, makes no contention that the method of computation is not correct but argues that, as the application made by the local in securing the insurance provides that "The cost of the insurance is to be borne wholly by the Union and the members will not individually contribute to such costs," he is not liable for any insurance assessment, which, he urges, is the obligation of the local and not of its members. The master reports that the group policy was retained by the local, and that the quoted provision of the application, which by the terms of the policy became a part of the contract of insurance, was not generally known to the members. It is reasonable to infer that the plaintiff did not know of this provision until the policy was produced at the hearing before the master.

The plaintiff further contends that he orally cancelled the insurance in January, 1934, when he notified the officer of the local in charge of the insurance and returned to him his certificate of insurance. The officer informed him that a written cancellation was necessary. The master found

that many cancellations were made in writing, and that the plaintiff "never protested in writing for at least ten months after January, 1934, the premiums assessed to him or sent a written cancellation of his insurance to the local."

The plaintiff on September 3, 1935, according to the records of the local, was indebted to it in the sum of $130.70. This included arrears on insurance, $81.20, dues for May, June and July, $25, three death assessments, $22, and a trade magazine subscription, $2.50. The local on the same day voted that the arrearages of all members must be paid by September 21, 1935, "otherwise, the executive board was to have full power to act in the matter." The plaintiff was sent an itemized statement of this indebtedness, together with a notation that the local had voted that all debts must be paid on or before September 21, 1935, and on September 23, 1935, he sent the local a money order for $27.60 with a note stating that $25 was for payment of dues and the balance, $2.60, was for the alliance assessment. The financial secretary, acting under instructions of the executive board, applied $25 to the payment on the insurance and sent the plaintiff a receipt showing that the $25 was so credited. The plaintiff on October 1, 1935, sent a money order for $22 in payment of the three death assessments, and wrote the local not to "accept this money on any other terms." On November 9, 1935, he was the only member who had not fully paid his indebtedness or who had not appeared before the executive board and made satisfactory arrangements to pay. The board notified him by mail on November 9, 1935, and by a telegram on November 11, 1935, to appear before it on November 12, 1935. He failed to appear. He contends that the financial secretary was not authorized to issue these notices, but the master found that the secretary was properly authorized to do so. The board continued in session on November 12, 1935, and the business agent, the respondent Burke, acting under instructions of the board, sent one Cirelli, who happened to be in the office of the local, to notify Sullivan to appear before the board; and Cirelli was further told to take Sullivan's place at the theatre if Sullivan refused to

comply with the request.  Burke also telephoned to the plaintiff's employer telling him that Cirelli was on his way to the theatre temporarily to replace Sullivan until the latter satisfactorily adjusted his alleged indebtedness to the local.  Cirelli went to the theatre and conveyed the message of the business agent to Sullivan.  Instead of going to the union headquarters, which were but a short distance away, Sullivan received his pay at the theatre and went home. He settled his indebtedness with the local on November 27, 1935, and resumed his employment.  The master found that, if the plaintiff was not liable for the payment of premiums upon his insurance because the cost of insurance was to be borne by the local, then the action of the defendants in causing the removal of Sullivan from his employment was improper and resulted in a loss of employment for fifteen days, amounting to $139.35.

The plaintiff, in becoming a member of the local, had entered into a contract.  The terms and conditions of the contract were expressed by the constitution and by-laws, which defined not only the benefits and privileges secured but also the duties and obligations assumed. *Ryan* v. *Hayes*, 243 Mass. 168. *Clark* v. *Morgan*, 271 Mass. 164. *Snay* v. *Lovely*, 276 Mass. 159.  The constitution expressly provided that the executive board had power to settle all disputes referred to it by the local.  The controversy between the plaintiff and the local was a dispute, *Agrippino* v. *Perrotti*, 270 Mass. 55, and the decision of the board (whose good faith is unquestioned) while acting within the authority conferred upon it was binding upon the plaintiff, even though it subsequently appeared to have been based upon an innocent mistake of fact. *Richards* v. *Morison*, 229 Mass. 458, 461. *Cohen* v. *Silver*, 277 Mass. 230, 235.  The power to settle the dispute included the right to employ the ordinary and incidental means to adjust the matter and the board was authorized to confer with the plaintiff; but the board could not compel payment of the claim by a threat of loss of employment or enforce its demand by removing the plaintiff from his position upon his refusal to appear before the board, especially when there is nothing

in the constitution and by-laws of either the alliance or the local that provides for such action. We need not consider whether, if there were such provisions, the board would be justified in compelling the plaintiff to relinquish his employment on account of his refusal to pay. Upon the record, the local had only the usual rights of a creditor seeking the satisfaction of its claim, and the method pursued, which resulted in depriving the plaintiff of his employment, constituted a wrongful interference with his right to work. *Shinsky* v. *Tracey*, 226 Mass. 21. *Gould* v. *Kramer*, 253 Mass. 433. *Sweetman* v. *Barrows*, 263 Mass. 349. *Walsh* v. *Reardon*, 274 Mass. 530. *Malloy* v. *Carroll*, 287 Mass. 376.

The defendants contend that the plaintiff has not exhausted his remedies within the union and that he cannot invoke the aid of the court. This principle of law is well established and is decisive if pertinent to the present case. *Correia* v. *Portuguese Fraternity*, 218 Mass. 305. *Puleio* v. *Sons of Itala & Neighborhood Mutual Benefit Society*, 266 Mass. 328. But no charges had ever been preferred against the plaintiff and the right of appeal provided in such cases is not applicable. The local referred the matter to the executive board with full power to act, but the master's report does not disclose that the board took any further action after the plaintiff left his employment upon November 12, 1935, or that it ever reported to the local or that the latter took any action. The defendants have not pointed out any provisions in the constitution or by-laws of either the alliance or the local that, we think, govern a situation like the present, and, after a careful perusal of them, we are unable to find any, even if they are so liberally construed as to include not only what is expressly mentioned but also what appears by fair implication. *Clark* v. *Morgan*, 271 Mass. 164. *Polin* v. *Kaplan*, 257 N. Y. 277. As it is not shown that the plaintiff had a remedy within the association, he had a right to seek redress in the courts. *Curran* v. *O'Meara*, 211 Mass. 261. *Walsh* v. *Reardon*, 274 Mass. 530. *Simons* v. *Berry*, 240 N. Y. 463.

The master finds that the defendants do not intend to in-

terfere further with the plaintiff's employment or to suspend or expel him from membership in the local; consequently, the plaintiff fails to show that he is entitled to an injunction. *Hubrite Informal Frocks, Inc.* v. *Kramer*, 297 Mass. 530. *Rosenthal* v. *Shepard Broadcasting Service, Inc.* 299 Mass. 286. *Suburban Coat, Apron & Linen Supply Co. Inc.* v. *LeBlanc*, 300 Mass. 509. Where a laborer has been wrongfully deprived of employment as a result of a conspiracy and the circumstances are such that an injunction is not required for full relief, he may have his bill retained for the assessment of damages. *DeMinico* v. *Craig*, 207 Mass. 593. *Hanson* v. *Innis*, 211 Mass. 301.

If the plaintiff, in order to secure reinstatement in his employment, was coerced against his consent and judgment to pay a bill, the validity of which he had consistently denied, then he could ordinarily recover the sum paid by an action of contract. *Dana* v. *Kemble*, 17 Pick. 545. *Taylor.* v. *Jaques*, 106 Mass. 291. *McMurtrie* v. *Keenan*, 109 Mass. 185. *Silsbee* v. *Webber*, 171 Mass. 378. The plaintiff is not merely seeking reimbursement for the amount wrongfully exacted but is seeking damages sustained on account of the alleged conspiracy, which included not only the amount paid in satisfaction of the insurance claim but also loss of wages. Intentional interference with the plaintiff's contract of employment without lawful justification by those having knowledge of such a contract, "is malicious in law, even if it is from good motives and without express malice." *Berry* v. *Donovan*, 188 Mass. 353, 356. *Beekman* v. *Marsters*, 195 Mass. 205. *McGurk* v. *Cronenwett*, 199 Mass. 457. The measure of damages is based not upon a breach of contract but upon the direct and proximate results of the wrongful acts of the defendants. *DeMinico* v. *Craig*, 207 Mass. 593, 600. *Hanson* v. *Innis*, 211 Mass. 301, 305. *Gould* v. *Kramer*, 253 Mass. 433, 440. *Anderson* v. *Moskovitz*, 260 Mass. 523, 527. The payment of the insurance claim was the very object which the defendants were endeavoring to accomplish, and the loss of employment was the natural consequence of their efforts to compel the plaintiff to pay. The payment of the claim and the loss of

wages were the direct result of the defendants' wrongdoing. *Carew* v. *Rutherford,* 106 Mass. 1, 18, 19. *Stiles* v. *Municipal Council of Lowell,* 233 Mass. 174, 183, 184. *Malloy* v. *Carroll,* 287 Mass. 376, 385.

The individual defendants were members of the executive board and are to be held liable for the loss suffered by the plaintiff on account of their action in compelling him to quit and remain out of employment until he paid the insurance premiums. The remaining members of the local are not to be held liable merely because of their membership. They are not shown to have participated in any wrongful conduct toward the plaintiff. Liability has been established only as to the individually named defendants. The final decree is reversed and a decree is to be entered ordering them to pay the sum of $220.55, being the amount of damages found by the master, together with interest from the date of the filing of the bill and costs taxable as at law. *Sweetman* v. *Barrows,* 263 Mass. 349. *Malloy* v. *Carroll,* 287 Mass. 376. *United Mine Workers of America* v. *Coronado Coal Co.* 259 U. S. 344.

*Ordered accordingly.*